[Nos. 53202-8, 53495-1. En Banc. November 5, 1987.]

CHELAN COUNTY DEPUTY SHERIFFS' ASSOCIATION, ET AL, *Respondents*, v. THE COUNTY OF CHELAN, *Petitioner.*

GIBSON GOFF III, *Petitioner*, v. THE CITY OF AIRWAY HEIGHTS, *Respondent.*

---

*Gary A. Riesen, Prosecuting Attorney,* and *E. R. Whitmore, Special Deputy,* for petitioner Chelan County.

*Powell & Morris, P.S.,* by *Brian C. Balch,* for petitioner Goff.

*Clem, Nelson & Zanol, P.S.,* and *Craig A. Nelson,* for respondents Chelan County Deputy Sheriffs' Association, et al.

*Miller & Wainwright, P.S.,* and *Steven C. Miller,* for respondent Airway Heights.

*C. C. Bridgewater, Prosecuting Attorney for Cowlitz County,* and *David R. Koss, Chief Civil Deputy,* on behalf of Washington Association of Counties and Washington Association of Prosecuting Attorneys, amici curiae for petitioner Chelan County.

*James C. Sloane, City Attorney,* and *Pat Dalton, Assistant,* on behalf of the Association of Washington Cities and the City of Spokane, amici curiae for petitioner Chelan County.

DURHAM, J.—In these two consolidated cases, plaintiffs brought actions seeking compensation for time spent "on call" as law enforcement officers. The principal issue before us is the applicability of the Washington Minimum Wage Act (MWA), RCW 49.46, to their claims.

# I
## FACTS
### Chelan County Deputy Sheriffs' Association v. Chelan County

The Chelan County Sheriffs' Association and approximately 40 individual Chelan County deputy sheriffs brought this action against their employer, Chelan County, seeking compensation for time spent "on call". Historically, Chelan County deputies received a monthly salary and no extra compensation for overtime. Beginning in 1976, the County made certain allowances, within maximum limits, to pay deputies who actually worked overtime. Since 1979, Chelan County and the Association have had a collective bargaining agreement. Under this agreement, deputies are normally scheduled for a 40–hour work week, for which they receive a monthly salary. They also receive compensation for hours actually worked overtime, within certain maximum limitations. In addition, when the deputies are not serving their normal shifts, they may be required to be "on call" to come to work if needed. The agreement contains no provisions for paying deputies for the time when they are on call, unless they are actually called out, when they receive overtime compensation.

On–call time normally occurs in the following three situations:

1. On holiday weekends, including the Apple Blossom Festival, Memorial Day, Independence Day and Labor Day, when the County needs extra law enforcement protection;

2. During periods between regular shifts. The sheriff's office operates two shifts per day with some deputies going off their shifts at 3, 4 and 5 a.m. The next shift begins at 7 a.m. During the interval before the 7 a.m. shift begins, deputies who have just gone off or who are about to come on their regular shifts may be on call;

3. Deputies in the detective division, in rotation, are on call at any time during the 24–hour day for a 7–day period once a month.

While deputies are on call, their conduct is restricted.

They may not leave the vicinity of Chelan County. They must remain at a location where they may be reached by telephone or radio. They may not engage in any personal or recreational activities which would interfere with their availability to respond to a call. The deputies cannot obtain regular outside employment which would conflict with their ability to respond to calls. They may not consume any alcoholic beverages while on call.

The Association and individual deputy sheriffs brought this action in 1980. Both parties brought motions for summary judgment. In February 1984, the trial court entered an order on these motions, ruling *inter alia,* that plaintiffs were "employees" within the meaning of the MWA; that the time plaintiffs spent on call and on lunch breaks was "work" within the meaning of the MWA; that the plaintiffs were entitled to overtime compensation for all hours worked in excess of 240 hours during a 28–day period; and that sleeping and eating time would not be excluded in calculating the number of hours worked if the deputy was on call during that time. The trial court unnecessarily entered findings of fact and conclusions of law accompanying the order on summary judgment. The trial court then entered an order bifurcating the trial, so that the issues governing liability would first be adjudicated, and then the amount of monetary recovery and attorney fees, if any, would be determined.

In November 1984, a bench trial was held on the County's affirmative defenses, including accord and satisfaction, a statutory bar under RCW 36.40.130, and laches. In March 1985, the trial court entered a judgment in plaintiffs' favor. Its conclusions of law conformed with its rulings in the previous summary judgment order. The trial court held that plaintiffs were entitled to recover overtime compensation for hours worked, including time spent on call or on lunch breaks, in excess of 240 hours during any 28–day period after May 28, 1980, the date when they first asserted a claim for compensation. It ruled that the amounts of such compensation would be determined in a separate trial.

The County appealed to the Court of Appeals, which affirmed the trial court's judgment. This court granted the County's petition for review.

## Goff v. City of Airway Heights

Gibson Goff III brought this action against his former employer, the City of Airway Heights, seeking compensation for time spent on call as a police officer in 1982 and 1983. Goff was hired by the City as a deputy policy officer on February 9, 1982. The City's police force consisted of two officers. Goff was told that he would be required to put in 8 hours of work per day for a 40–hour week.

It was the City's policy to have police coverage 24 hours a day, 7 days a week, so that an officer would always be able to respond to police calls. When Goff first began working for the City, he and Police Chief Wayne Odum each took alternating 12–hour shifts. Later, the officers changed to alternating 48–hour shifts to alleviate the physical demands. The officers were supposed to perform regular assigned duties no more than 8 hours per day. The remainder of each shift was to be spent on call. Goff testified that he actually spent an average of about 30 hours during each 48–hour shift performing police duties, including patrol time, preparing reports, and responding to calls.

While on call, the officers were required to remain within city limits, so Goff could not return to his home in Medical Lake during these periods. He could sleep either at the police station or at a friend's house as long as he could be reached by telephone or radio. Goff testified that he could go where he wanted "[w]ithin reason" as long as he stayed within city limits and could immediately respond to calls. Goff also testified that during shifts, he was required to wear a uniform while out of the station and to present a proper police image.

Goff was paid $960 per month in 1982 and $1,056 per month in 1983, calculated on the basis of a 40–hour work week and a wage of $5.54 per hour in 1982 and $6.60 per hour in 1983. On a number of occasions, Goff had discus-

sions with the mayor and with Chief Odum about the number of hours he was working, and stated his belief that it was impossible to do his duties in 8 hours per day. Goff inquired about receiving compensation for overtime. He was not paid any overtime compensation.

On February 23, 1983, Goff was dismissed by the City. Subsequently, he brought an action against the City claiming, *inter alia,* that under the MWA, he was entitled to be paid overtime compensation for several hundred hours. A jury trial was held. During trial, the City brought a motion for a directed verdict on the grounds that Goff was not covered by the MWA, citing an exclusion in RCW 49.46-.010(5)(j). The court denied the motion. The City later proposed an instruction that would have informed the jury:

> A statute provides that any individual whose duties require that he reside or sleep at the place of his employment or who otherwise spends a substantial portion of his work time subject to call, and not engaged in the performance of active duties, is not an employee covered by the provisions of the Washington Minimum Wage Act.

This instruction was a statement of the exclusion in RCW 49.46.010(5)(j). The trial court declined to give this instruction, ruling as a matter of law that Goff was covered by the MWA. The City took proper exception, citing RCW 49.46-.010(5)(j).

Under the trial court's instructions, Goff had to prove that he "worked" the hours for which he claimed overtime wages and that he was not paid for such additional time. The court also instructed the jury that "hours worked" do not include periods when an employee is "completely relieved from duty." The court further instructed the jury on how to determine if sleeping periods constituted "hours worked". The jury was also provided with instructions on deciding "[w]hether on-call time or waiting time is time worked for which compensation is due under the Washington Minimum Wage Act . . ."

The jury found that Goff had worked a total of 960 hours

that were in excess of 40 hours but less than 60 hours per week. It also found that he had worked a total of 740.5 hours in excess of 240 hours per 28–day cycle. The trial court entered conclusions of law ruling that Goff was entitled to compensation at the regular rate for all hours worked in excess of 40 hours but less than 60 hours per week, and that he was entitled to be paid time and a half for those hours worked in excess of 240 hours per 28–day cycle. On the basis of these findings and conclusions, the trial court ruled that the City owed Goff $11,632.51 in wages. The court doubled this amount as exemplary damages pursuant to RCW 49.52.070. After adding interest on the amount of wages owed, the court arrived at a judgment for $25,399.03, plus costs and attorney fees.

The City appealed. The Court of Appeals reversed the trial court's judgment and remanded the case for a new trial. This court granted Goff's petition for review.

## II
### ANALYSIS
#### A
#### General Applicability of Minimum Wage Act to Individuals Who Spend Time On Call

The principal issue in these consolidated cases is if the plaintiffs are entitled to compensation under the MWA for time spent on call. The MWA provides that nonexempt individuals who are employed by public entities must be paid certain minimum hourly wages. RCW 49.46.020(2). In addition, the MWA requires public agencies to pay time and a half to any law enforcement "employee" for tours of duty which in the aggregate exceed 240 hours in a work period of 28 consecutive days. RCW 49.46.130(2).[1] Certain

---

[1] RCW 49.46.130 provides in pertinent part:

"(1) No employer shall employ any of his employees for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one–half times the regular rate at which he is employed . . .

"(2) No public agency shall be deemed to have violated subsection (1) of this section with respect to the employment of . . . any employee in law enforcement

categories of workers are excluded from the definition of "employee" in the MWA. RCW 49.46.010(5). The exclusion involved in the present cases is RCW 49.46.010(5)(j), which provides as follows:

> "Employee" includes any individual employed by an employer but shall not include:
>
> . . .
>
> (j) Any individual whose duties require that he reside or sleep at the place of his employment or who otherwise spends a substantial portion of his work time subject to call, and not engaged in the performance of active duties[.]

If plaintiffs are within this exclusion, the compensation requirements of the MWA do not apply to them.[2]

In order to decide if the exclusion in RCW 49.46.010(5)(j) applies to an individual who spends time on call, it is necessary to resolve the following factual questions. The first step is to determine if the individual's on-call time constitutes a substantial portion of his overall work time. If it does not, the exclusion in RCW 49.46.010(5)(j) does not apply and the on-call time is compensable under the MWA. On the other hand, if the on-call time is a substantial portion of the individual's overall work time, it is necessary to proceed to the second step of the analysis, which is to decide if the on-call time is spent engaged in the performance of active duties. If it is, the exclusion in RCW 49.46.010(5)(j) does not apply and the on-call time is compensable under the MWA. If the on-call time is not spent

activities . . . if: (a) In a work period of twenty-eight consecutive days the employee receives for tours of duty which in the aggregate exceed two hundred and forty hours . . . compensation at a rate not less than one and one-half times the regular rate at which he is employed . . ."

[2]In the statement of issues presented for review in its petition to this court, Chelan County also includes whether the deputy sheriffs are excluded from the MWA's coverage under RCW 49.46.010(5)(l), which excludes those who hold an appointive office of a county. However, we shall not address the "appointive officer" exclusion, because the County has not presented any argument or citations to legal authority bearing on this issue. See RAP 13.4(e); 10.3(a)(5). See also Smith v. King, 106 Wn.2d 443, 451, 722 P.2d 796 (1986).

in the performance of active duties, then the exclusion applies and the on–call time is not compensable.

■ Having established a general framework for analyzing the applicability of RCW 49.46.010(5)(j) to on–call time, we next address the interpretation of certain terms which are involved in that analysis. First, what is the meaning of "substantial portion" in the context of deciding if on–call time is a substantial portion of overall work time? Other courts have observed that the phrase "substantial part" is not susceptible to a precise quantitative definition. In general, it means the converse of insubstantial or immaterial. Thus, a substantial part may be less than half of the total amount. *See Frank v. McMeekan*, 56 F. Supp. 369, 371 (E.D.N.Y. 1944); *Berry v. 34 Irving Place Corp.*, 52 F. Supp. 875, 879 (S.D.N.Y. 1943) (construing "substantial part" in context of Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (1982)). *See also In re Estate of Krause*, 173 Wash. 1, 8, 21 P.2d 268 (1933) ("substantial" is more than merely nominal). It is reasonable to construe the phrase "substantial portion" in RCW 49.46.010(5)(j) in this fashion. Therefore, on–call time is a substantial portion of overall work time if it is not insubstantial, immaterial, or nominal.

If the on–call time is a substantial portion of the individual's overall work time, then it is necessary to decide if the on–call time is spent engaged in the performance of active duties and, therefore, is compensable under the MWA. For guidance in how to make this determination, it is appropriate and helpful to refer to the approach used by federal courts in deciding if on–call time is compensable working time under the federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201–219 (1982).[3] In *Armour & Co. v.*

---

[3]The Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (1982), is the federal statute establishing minimum wages. When the present actions were filed, state and local employees' claims for compensation were governed exclusively by state statute, according to *National League of Cities v. Usery*, 426 U.S. 833, 49 L. Ed. 2d 245, 96 S. Ct. 2465 (1976). In *National League of Cities*, the United States Supreme Court held that the tenth amendment to the United States Constitution

*Wantock,* 323 U.S. 126, 133, 89 L. Ed. 118, 65 S. Ct. 165 (1944), the United States Supreme Court indicated that waiting time may be compensable working time in some circumstances. The Court observed that an employer may hire an employee to stand by ready to serve, and waiting time may be treated by the parties as a benefit to the employer. The Court held that whether time is spent predominantly for the benefit of the employer or the employee is a question of fact dependent on all the circumstances of the case. In *Skidmore v. Swift & Co.,* 323 U.S. 134, 136–37, 89 L. Ed. 124, 65 S. Ct. 161 (1944), the Court held that whether waiting time constitutes compensable working time is a question of fact which involves consideration of the agreement between the particular parties, the parties' conduct, the nature of the service, its relation to the waiting time, and all of the surrounding circumstances.

■ Relying on the principles set forth in *Armour* and *Skidmore,* federal courts have subsequently recognized the following factors as relevant in determining if on–call time is compensable working time: the parties' agreement, whether the employees are required to remain on the premises or at any particular place during the on–call time, the degree to which the employees are permitted to engage in their own activities during on–call time, and if the employee's availability during on–call time is predominantly for the employer's or the employee's benefit. *See*

---

precluded the application of federal wage laws to state and local employees and, therefore, the FLSA did not apply to them. In 1985, the United States Supreme Court overruled *National League of Cities,* holding that the FLSA may be applied to state and local employees. *Garcia v. San Antonio Metro Transit Auth.,* 469 U.S. 528, 83 L. Ed. 2d 1016, 105 S. Ct. 1005 (1985). None of the parties argue that *Garcia* should be applied retroactively to their cases, and we believe that it applies prospectively only. *See Mineo v. Port Auth.,* 779 F.2d 939, 944–46 (3d Cir. 1985), *cert. denied,* 106 S. Ct. 3297 (1986); *Brooks v. Lincolnwood,* 620 F. Supp. 24, 26 (N.D. Ill. 1985) (refusing to apply *Garcia* retroactively). Thus, the present cases are still governed by the principles in *National League of Cities,* so the FLSA does not generally apply to them. Nevertheless, it is reasonable to look to federal case law interpreting the FLSA for guidance in deciding when on–call time is compensable active duty under state law. *See Weeks v. Chief of Wash. State Patrol,* 96 Wn.2d 893, 897, 639 P.2d 732 (1982).

Annot., *Call or Waiting Time as Working Time Within the Minimum Wage and Overtime Provisions of the Fair Labor Standards Act (29 USC §§ 206, 207)*, 3 A.L.R. Fed. 675, 684–89 (1970 & Supp. 1986).

We believe that these factors are equally pertinent in deciding if on–call time is active duty in the context of the MWA and, therefore, we adopt them for that purpose. *Cf. Weeks v. Chief of Wash. State Patrol*, 96 Wn.2d 893, 897–98, 639 P.2d 732 (1982) (referring to federal case law and rules under FLSA for guidance in deciding that state troopers' lunch period constituted "work").[4]

Given this formula for analyzing the applicability of the MWA to individuals who spend time on call, we next consider it in relation to the facts of the present cases.

B
Chelan County Deputy Sheriffs' Claims

■ Chelan County argues that the Court of Appeals and the trial court erred in holding that the deputy sheriffs' on–call time was spent in the performance of active duties, and

---

[4]While the Court of Appeals referred to the above multifactor approach in both *Chelan Cy. Deputy Sheriffs' Ass'n v. County of Chelan*, 45 Wn. App. 812, 725 P.2d 1001 (1986) and *Goff v. Airway Heights*, 46 Wn. App. 163, 730 P.2d 691 (1986), it seems to have actually applied a somewhat different analysis in *Goff*. In that case, it stated:

"The City presented evidence at trial that Mr. Goff was afforded substantial portions of work time subject to call and not engaged in active duty. Mr. Goff's personal log documented 30 hours of police work during a 48–hour active duty/on–call shift. The reasonable inference is that Mr. Goff had 18 hours of on–call duty which he spent predominantly for his own benefit." *Goff*, at 169.

By implying that all on–call time not spent doing specific police duties must have been for Goff's own benefit and thus was not active duty, the Court of Appeals seems to have given no effect to the restrictions placed on Goff during his on–call time. We disagree with this approach. The fact that a person is not actually performing specific police duties during on–call time does not necessarily preclude such time from being compensable active duty. A reasonable application of the multifactor approach allows for consideration of the restrictions placed on the employee during on–call time. This approach is preferable to identifying the specific activities in which the individual was actually involved during each on–call period.

thus was compensable under the MWA.[5] Before considering the law in relation to this case, it is necessary to determine the proper standard of review. The trial court decided that the deputies' on-call time was compensable under the MWA in an order on summary judgment. Therefore, this court must apply the standard for reviewing summary judgment orders.[6] We must engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). If there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider the facts submitted and all reasonable inferences therefrom in the light most favorable to the nonmoving party. The motion should be granted only if reasonable persons could reach

---

[5]The Court of Appeals decided that day shift deputies' on-call time during weekends did not constitute a substantial portion of their overall work time and, therefore, the deputies on call during such time were not excluded from the MWA. This holding is consistent with our interpretation of RCW 49.46.010(5)(j).

We also agree with the Court of Appeals apparent decision that the intervals of on-call time spent by deputies during early morning hours, and the 1-week periods of on-call time spent by detective deputies, did constitute substantial portions of their overall work time. Having decided that these periods of on-call time were substantial portions of deputies' work time, it is necessary to consider if such on-call time was active duty in order to determine if the deputies involved were excluded from the MWA under RCW 49.46.010(5)(j).

[6]Some confusion has occurred as to the proper standard of review, due to the unusual history of these proceedings. The trial court entered findings of fact and conclusions of law along with its order on summary judgment concerning the compensability of the on-call time under the MWA. Subsequently, a trial was held on the County's affirmative defenses. The trial court then entered a final judgment for the plaintiffs on the issue of liability, accompanied by findings of fact which essentially reiterated those entered along with the summary judgment order. The Court of Appeals treated the trial court's findings of fact regarding the restrictions on deputies during their on-call time as verities, because they were unchallenged. However, because these findings were entered in the course of a summary judgment, they carry no weight on appeal. Findings of fact are superfluous in summary judgment proceedings. A failure to assign error to them has no effect on the case. *Duckworth v. Bonney Lk.*, 91 Wn.2d 19, 21-22, 586 P.2d 860 (1978); *Washington Optometric Ass'n v. County of Pierce*, 73 Wn.2d 445, 448, 438 P.2d 861 (1968). The parties now agree that because the issues before us were decided on summary judgment, we must review the record de novo according to CR 56.

but one conclusion from all the evidence. *Wilson v. Steinbach, supra; Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 256–57, 616 P.2d 644 (1980). Even where the evidentiary facts are undisputed, if reasonable minds could draw different conclusions from those facts, then summary judgment is not proper. *Money Savers Pharmacy, Inc. v. Koffler Stores (Western) Ltd.,* 37 Wn. App. 602, 608, 682 P.2d 960 (1984).

The County argues that if the multifactor approach described above were properly applied to this case, the deputies' on–call time would not be considered compensable active duty. It emphasizes that the deputies were not required to remain on the employer's premises during on–call time. It also contends that the deputies were generally free to spend their on–call time as they wished as long as they were able to come on duty if called. The deputies contend, however, that their activities and freedom of movement were limited to such a degree that they were essentially on active duty during on–call periods. They emphasize that they could not participate in activities that would impede their ability to respond to calls, they had to remain near a telephone and in the vicinity of Chelan County, they could not drink alcohol, and they could not seek outside employment.

Both parties cite numerous cases which they contend are persuasive authority for resolution of this action in their favor. However, none of these cases is factually identical to the present case. *See, e.g., Allen v. United States,* 1 Cl. Ct. 649, *aff'd on other grounds,* 723 F.2d 69 (D.C. Cir. 1983); *Pilkenton v. Appalachian Regional Hosps., Inc.,* 336 F. Supp. 334 (W.D. Va. 1971); *Theune v. Sheboygan,* 67 Wis. 2d 33, 226 N.W.2d 396 (1975); *Weeks v. Chief of Wash. State Patrol,* 96 Wn.2d 893, 639 P.2d 732 (1982); *Lindell v. General Elec. Co.,* 44 Wn.2d 386, 267 P.2d 709 (1954). *See*

*generally* 3 A.L.R. Fed. at 675.[7] Above all, these cases reinforce the proposition that each situation is highly dependent on all of the surrounding circumstances.

Considering the facts submitted and the reasonable inferences from those facts in the light most favorable to the County, we are unable to conclude that the deputies were entitled to summary judgment as a matter of law. Although we recognize that many of the facts presented are uncontroverted, we believe that reasonable minds could draw different conclusions from them. We believe that a more complete presentation of the facts at trial, along with the benefits of testimony in person, under oath and subject to cross-examination, would lead to a more certain determination as to whether the on-call time was active duty. Therefore, we remand this case for a trial guided by the principles adopted herein.

The County further argues that this court should hold that time spent sleeping and eating while on call for periods longer than 24 hours is not active duty. The County contends that a reasonable time not to exceed 8 hours for normal eating and sleeping must be excluded from any such time periods which are deemed compensable.[8]

The resolution of compensability of sleeping time is highly dependent on the facts and circumstances of the individual case, as is the analysis of compensability of on-call time in general. *See Armour & Co. v. Wantock, supra; Skidmore v. Swift & Co., supra.* The County refers to 29 C.F.R. § 785.22 (1986), which provides as follows:

> (a) General. Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods

---

[7]In *Weeks v. Chief of Wash. State Patrol,* 96 Wn.2d 893, 639 P.2d 732 (1982), this court held that lunch periods during which state troopers were on call constituted work. Pursuant to *Weeks,* Chelan County has stipulated that its deputy sheriffs' lunch periods are active duty.

[8]Because the County has stipulated that lunch hours are work time, it appears that this argument is directed toward sleeping time and eating time other than scheduled lunch hours.

and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

For the most part, this rule accurately reflects the case law concerning this issue. However, the last sentence of the rule appears to be an oversimplification of the cases. Some cases have held that where there was no expressed or implied agreement excluding sleep time from hours worked, such time did constitute work. *See General Elec. Co. v. Porter,* 208 F.2d 805, 815 (9th Cir. 1953), *cert. denied,* 347 U.S. 951, 975 (1954); *Campbell v. Jones & Laughlin Steel Corp.,* 70 F. Supp. 996 (W.D. Pa. 1947). However, these cases do not indicate that in the absence of such an agreement, sleep time will always be work time. Rather, the compensability of sleep time in such cases is still highly dependent on the facts of the particular case. *See General Elec. Co. v. Porter, supra* at 814 (in absence of an express or implied agreement, whether sleep time is work depends on the nature of the service and its relation to the waiting time).

Here, the County and the deputy sheriffs had no agreement that sleeping time in particular would be excluded from compensable time. In absence of such an agreement, we conclude that the compensability of sleep time of individuals who are on call for periods longer than 24 hours is a question of fact, which must be resolved by applying the same multifactor approach which we have adopted with respect to on–call time in general. Thus, factors pertinent to this question include whether such time is spent primarily for the employer's or the employee's benefit, the degree to which the employee may engage in personal activities, and whether the employees are required to remain on the employer's premises or at any particular place. The fact that the deputies in this case were allowed to remain at

home during their sleep time while on call seems to militate against a finding that such time was compensable active duty. Nevertheless, we believe that the trial court is in a better position to make the findings it deems appropriate after considering all the circumstances of this case. On remand, the trial court should resolve this issue after trial, in accordance with the approach we have adopted in this opinion.

C

Goff's Claims

In denying the City's motion for a directed verdict and declining to give the City's proposed jury instruction which recited the exclusion from the MWA in RCW 49.46.010-(5)(j), the trial court ruled as a matter of law that Goff was covered by the MWA. The City argues that the trial court erred in so ruling.

The trial court, however, did give the following instructions to the jury. Instruction 22 provided:

> Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is told in advance that he may leave the job and that he will not have to commence work until a specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances in the case.

This instruction is a quotation of a federal regulation concerning off duty time for purposes of deciding what is work under the FLSA. *See* 29 C.F.R. § 785.16(a) (1986). Instruction 24 stated:

> Whether on–call time or waiting time is time worked for which compensation is due under the Washington Minimum Wage Act depends upon the particular circumstances of each case. The determination involves scrutiny and construction of the agreements between the

particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances.

In determining whether an employee's on–call time or waiting time is work, the test is not whether an employee's leisure is curtailed at all, but rather whether it is so restricted that it is not spent primarily for the employee's benefit.

An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on–call." An employee who is not required to remain on the employer's premises but is merely required to remain within contact by radio or telephone is not working while on–call.

This instruction is derived primarily from two federal regulations addressing when waiting time and on–call time are work for purposes of the FLSA. *See* 29 C.F.R. §§ 785.14, 785.17 (1986). These regulations accurately reflect the factors defined in the federal case law as considerations in deciding when such time is work under the FLSA. *See, e.g., Skidmore v. Swift & Co.,* 323 U.S. 134, 89 L. Ed. 124, 65 S. Ct. 161 (1944); *Armour & Co. v. Wantock,* 323 U.S. 126, 89 L. Ed. 118, 65 S. Ct. 165 (1944).

By giving the jury these instructions, the trial court essentially informed it of the proper criteria for deciding if Goff's on–call time was compensable under the MWA.[9] Although the instructions were somewhat more detailed than the multifactor approach we have identified above as the proper test for deciding if an individual's on–call time is active duty for purposes of the MWA, we believe that they adequately stated the pertinent considerations. Having been so instructed, the jury decided if Goff's time was compensable under the MWA based on the appropriate

---

[9]The last sentence of instruction 24 is somewhat conclusory, but not determinative given the facts of this case. It would, however, be inappropriate in other cases, such as the companion case, *Chelan County,* where it could be interpreted as resolving the ultimate question for the jury.

standards.[10] Therefore, we conclude that these instructions effectively cured any error which resulted from the court's failure to give the City's proposed instruction. In short, we find no reversible error in the trial court's rulings before and during trial.

The City also argues that the trial court erred in concluding that, pursuant to RCW 49.52.070, Goff was entitled to recover double damages. RCW 49.52.070 provides:

> Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees . . ."

RCW 49.52.050 provides, in pertinent part:

> Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who
>
> . . .
>
> (2) Wilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract;
>
> . . .
>
> Shall be guilty of a misdemeanor.

Pursuant to these provisions, double damages may be awarded for a willful withholding of wages due under a statute, ordinance, or contract. Nonpayment of wages is willful in this context when it is the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment. It is a question of fact if there is a bona fide dispute. *Lillig v. Becton–Dickinson,* 105

---

[10]The trial court also provided the jury with an instruction concerning when sleeping time was work. This instruction, number 23, was a verbatim statement of 29 C.F.R. § 785.22 (1986). As we have noted in our discussion of *Chelan County,* we approve a modified version of that statement as a standard for deciding if sleeping time is active duty. In the present case, however, the City did not assign error to instruction 23 and, therefore, it is the law of the case. *See* RAP 10.3(g).

Wn.2d 653, 659, 717 P.2d 1371 (1986); *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 500, 663 P.2d 132 (1983).

In the present case, the trial court included the following question in the verdict form, over the objection of the City:

> Question No. 12: Prior to terminating plaintiff's employment, did the defendant honestly believe that plaintiff had been paid all compensation that he was legally entitled to receive?

The jury responded in the negative to this question. The City assigns error to the trial court's submission of this question to the jury. It argues that this question was not consistent with RCW 49.52.050(2) and .070, and the judicial interpretations thereof.

We believe that although this question was rather inartfully drawn, it was an adequate phrasing of the issue underlying the determination of whether double damages should be awarded. The question reflects some of the language in the case law interpreting the statutes and, therefore, we do not believe that the trial court committed reversible error in submitting it to the jury. *See Ebling v. Gove's Cove, Inc.*, at 500 ("An employer's genuine belief that he is not obligated to pay certain wages precludes the withholding of wages from falling within the operation of RCW 49.52.050(2) and 49.52.070"). *See also McAnulty v. Snohomish Sch. Dist. 201*, 9 Wn. App. 834, 838, 515 P.2d 523 (1973). We suggest, however, that in general, the better practice would be to provide juries with a question that more fully expresses the interpretation of the statute as stated in *Lillig v. Becton–Dickinson*, at 659.[11]

---

[11]Our conclusion that the challenged question was adequate in this case is buttressed by the fact that the trial court also gave the jury the following instruction pertinent to the issue of double damages:

> A statute provides that an employer who willfully and with intent to deprive an employee of any part of his wages, shall pay said employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance or contract, shall be liable in a civil action by the aggrieved employee to judgment for twice the amount of the wages unlawfully withheld.
>
> That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.

Having decided that the trial court's presentation of the challenged question to the jury was not erroneous in this case, we must still consider if the jury's response to that question was supported by substantial evidence. Goff contends that the jury's finding that the City did not honestly believe that he had been paid all compensation to which he was legally entitled was supported by testimony. Specifically, two individuals in City government during Goff's employment, Mayor Robert Bundy and City Council Member Cathy Teague, testified that they believed that Goff should have been paid overtime.

This testimony, however, constitutes nothing more than a statement of personal opinion. The City Council, as a body, had the authority to determine how much compensation employees would receive. There is no evidence in the record whatsoever that while Goff was employed, the City Council reached a consensus that he had not been paid all the compensation to which he was legally entitled. Two other individuals who served as city council members during Goff's employment, Joseph Martella and Vern Patton, testified that they did not think that Goff was entitled to overtime compensation. If anything, this testimony coupled with that discussed above, would support a finding that there was indeed a bona fide dispute over Goff's compensation. In any event, the personal opinions of various individual Council members or other City officials are of limited

That under this statute a non-payment of wages is willful when it is not a matter of mere carelessness but the result of knowing and intentional action. An employer does not willfully withhold wages under this statute where he has a bona fide belief that he is not obligated to pay them. Where the obligation to pay wages [is] fairly debatable double damages are not awardable under this statute.

Instruction 27. This instruction, to which the City did not object, was an accurate and complete statement of our courts' interpretations of the statutes. *See Lillig v. Becton–Dickinson,* 105 Wn.2d 653, 659, 717 P.2d 1371 (1986); *Ebling v. Gove's Cove,* 34 Wn. App. 495, 500, 663 P.2d 132 (1983); *McAnulty v. Snohomish Sch. Dist. 201,* 9 Wn. App. 834, 838, 515 P.2d 523 (1973); *Cameron v. Neon Sky, Inc.,* 41 Wn. App. 219, 703 P.2d 315 (1985); *Cannon v. Moses Lk.,* 35 Wn. App. 120, 663 P.2d 865, *review denied,* 100 Wn.2d 1010 (1983); *Brandt v. Impero,* 1 Wn. App. 678, 463 P.2d 197 (1969).

value in determining the official position of the City Council, and, standing alone, are insufficient evidence to support the jury's answer to the interrogatory. Accordingly, we conclude that there is no substantial evidence to support the jury's response to the trial court's question and the trial court erred in awarding Goff double damages based on that response.

In summary, we reinstate the trial court's award representing the wages owed to Goff under the MWA, plus interest. The trial court's award of double damages under RCW 49.52.070, however, is reversed. Finally, we conclude that Goff is entitled to recover reasonable attorney fees and costs for the time spent on his claims on appeal, pursuant to RCW 49.46.090(1), 49.48.030, and RAP 18.1.

### III
#### CONCLUSION

The trial court's judgment in favor of the Chelan County deputy sheriffs is reversed. That case is remanded for a trial on the issue of whether the deputy sheriffs' on-call time, including sleep time, was active duty under the MWA.

The trial court's award for wages owing to Goff, plus interest, is reinstated. We reverse the award of double damages to Goff. Goff's request for attorney fees on appeal is granted.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.