**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| KEITH SHRINER and ELIZABETH SHRINER, husband and wife, | ) ) ) | No. 80774-9-I |
| Appellants, | ) ) | |
| v. | ) ) ) | DIVISION ONE |
| JON J. DUFRESNE and JANE DOE DUFRESNE, husband and wife and the marital community composed thereof, | ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | |

MANN, C.J. — Keith and Elizabeth Shriner appeal the trial court's order granting summary judgment in favor of Jon Dufresne. The Shriners argue that the trial court erred in granting summary judgment because there were ambiguities in a lease with option to purchase and a subsequent associated purchase and sale agreement, thus creating a genuine issue of material fact. The Shriners further argue that service of their complaint on Dufresne re-exercised the option to purchase, and the court should toll the date in which the Shriners were required to close the purchase. Finally, the Shriners argue that the trial court erred in its award of attorney fees against them. Because the

Citations and pin cites are based on the Westlaw online version of the cited material.

purchase and sale agreement unambiguously satisfied the Shriners' option to purchase, and because the Shriners defaulted on this agreement, we disagree and affirm.

I. FACTS

A. Background

On January 23, 2012, the Shriners entered into a letter of intent with Dufresne for a real estate lease with purchase and sale agreement for a home located at 7545 151st Ave NE, Redmond, WA 98052 (the property). After moving into the property, on February 7, 2012, the Shriners and Dufresne entered into a residential lease, with a purchase and sale option agreement (lease option).

The lease option included the terms for the Shriners' occupation of the property, as well as a $345,000 purchase option for the property. A portion of the lease payment was to be applied to the down payment and the Shriners were required to pay an $8,000 fee for exercising the purchase option. The lease option was for an original term of 36-months, with a possible 24-month extension. The extended lease term expired on January 31, 2017. Upon exercise of the purchase option, the Shriners were required to pay the remaining balance by the end of the lease term.

The lease option provided that Dufresne could "assign the lease and property to third parties or corporation," but required said parties to assume all terms and conditions of the lease option. In the event they violated the terms of the lease option, the Shriners were liable to pay Dufresne all costs and damages to the property, cleaning costs, court and attorney fees, and forfeit the $8,000 purchase option fee. In the event Dufresne violated the terms of the lease option, "liquidated and punitive damages [would be] limited to the full refund of the $8,000 purchase option fee and the pro rata portion of

rent that was to be applied towards [the Shriners'] down payment and closing costs." Both parties negotiated the lease option terms with the benefit of legal counsel.

In the summer of 2015, the Shriners learned that Dufresne was planning to sell the property to a third party. Knowing that the value of the property exceeded the lease option price by at least $100,000, and out of fear that a new owner might be unwilling to honor the lease option, the Shriners executed the purchase option. The execution took the form of a residential purchase and sale agreement (PSA), dated November 25, 2015. The purchase price in the agreement was $353,000.[1] The PSA "expressly revoke[d] and replace[d] all prior agreements between the parties except the [lease option]," and stated "this Agreement and the terms and conditions contained herein satisfy the Buyer's option to purchase." The closing date of the PSA was no later than January 8, 2016.

By executing the PSA, Keith Shriner represented that he was fully approved by a lender, and that there was no finance contingency. This representation was inaccurate. Due to a prior foreclosure and poor credit, the Shriners were never able to obtain financing.

On January 15, 2016, Dufresne, through his attorney, delivered the Shriners written notice of their default under the PSA and the termination of his obligation to sell them the property pursuant to its terms. On July 21 and August 19, 2016, the Shriners again attempted to execute purchase and sale agreements. The terms of these agreements, however, differed from the lease option. Dufresne did not accept the proposed agreements.

---

[1] The increased purchase price was to accommodate Dufresne transferring appliances and paying certain closing costs.

The Shriners remained unable to obtain financing to purchase the property. Prior to the summary judgment order, the Shriners conceded they did not have financing, but maintain that they are "ready, willing, and able" to purchase the property.

B. Procedural History and Fees

On September 1, 2016, the Shriners filed a complaint for breach of contract, specific performance, and injunctive relief. The Shriners also filed a lis pendens on the property.

On October 4, 2017, Dufresne moved for summary judgment seeking dismissal of all claims and cancellation of the lis pendens. After hearing argument, on October 27, 2017, the trial court granted Dufresne's motion for summary judgment dismissing the Shriners' claims with prejudice and canceling the lis pendens. Based on Dufresne's voluntary agreement, the court allowed the Shriners to remain in the property for six months subject to their complying with the lease portion of the original lease option. The trial court authorized Dufresne to apply for reasonable attorney fees and costs.

The Shriners appealed the trial court's summary judgment. This court, in an unpublished opinion, dismissed the Shriners' appeal as untimely, without prejudice, due to their failure to properly seek discretionary review of the trial court's interlocutory summary judgment order. Shriner v. Dufresne, No. 77637-1-I (Wash. Ct. App. Mar. 4, 2019) (unpublished). We awarded Dufresne his attorney fees on appeal under RAP 18.1(a).

Following this court's dismissal, Dufresne moved the trial court to supplement the judgment it awarded to him to reflect the attorney fees awarded on appeal, and to enter

a final judgment on the Shriners' claims under CR 54(b). The Shriners did not oppose entry of a final judgment.

The Shriners appeal.

## II. ANALYSIS

### A. Summary Judgment

The Shriners argue that the trial court erred in granting summary judgment because there was ambiguity regarding the purchase option in both the lease option and the PSA, thus creating a genuine issue of material fact. We disagree.

This court reviews summary judgment decisions de novo. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). "Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Int'l Marine Underwriters, 179 Wn.2d at 281. The moving party has the initial burden of proving the absence of an issue of material fact. Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). When the moving party is a defendant who meets this initial showing, then the inquiry shifts to the plaintiff. Young, 112 Wn.2d at 225. If the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the trial court should grant the motion for summary judgment. Young, 112 Wn.2d at 225.

On review, we must consider "the facts submitted and all reasonable inferences therefrom in the light most favorable to the nonmoving party." Chelan County Deputy Sheriffs' Ass'n v. Chelan County, 109 Wn.2d 282, 294, 745 P.2d 1 (1987). "Even where the evidentiary facts are undisputed, if reasonable minds could draw different

conclusions from those facts, then summary judgment is not proper." Chelan County, 109 Wn.2d at 295. A trial court's findings of fact are superfluous in summary judgment proceedings and have no weight on appeal. Chelan County, 109 Wn.2d at 294 n.6.

When a court relies on inferences drawn from extrinsic evidence, interpretation of a contract is a question of fact. Berg v. Hudesman, 115 Wn.2d 657, 667-68, 801, P.2d 222 (1990). But contract interpretation is a question of law when the interpretation does not depend on the use of extrinsic evidence. Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 176 Wn.2d 502, 517, 296 P.3d 821 (2013).

Courts interpret contracts to give effect to the intent of the parties at the time they entered the contract. Berg, 115 Wn.2d 657 at 663. In doing so, they attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than the unexpressed subjective intent of the parties. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.2d 262 (2005). Courts impute an intention corresponding to the reasonable meaning of the words used, giving words their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. Hearst, 154 Wn.2d at 504. Courts do not interpret what was intended to be written but what was written. Hearst, 154 Wn.2d at 504.

The Shriners assert that the purchase option in the lease option was irrevocable and could be exercised as many times as they pleased. Dufresne asserts that the 2015 PSA replaced and satisfied the option to purchase. Dufresne is correct.

On its face, the lease option provides in relevant part:

-6-

1. [Dufresne] leases to [the Shriners] and [the Shriners] lease from [Dufresne], with an end of lease exclusive option to purchase, in which a portion of the rent will be applied towards the [Shriners'] down payment and closing costs, at the end of the lease term and escrow is executed and closed, upon the terms and conditions contained herein, the dwelling located at 7545 151st Ave NE Redmond, Washington 98052 for the period commencing on the 1st day of February, 2012, and thereafter, for a period of 36 months, until midnight the day of January 31st, 2015 with an option to extend, for a fee, and for a period of 24 months, until midnight the day of January 31st, 2017, At which time this lease and option to purchase is automatically terminated unless a written renewal is in place.

    . . . .

4. The Purchase price at the end of the lease shall be $345,000.  <u>See EXHIBIT 1 (spreadsheet) and (letter of Intent and Terms) for more details and of terms.</u>

The incorporated letter of intent provides further:

1. The sales price shall be $345,000.
2. The total Lease payment shall be $2,100 a month.
3. The Lease shall begin on February 1st 2012.
4. The least term is 36 months <u>unless the purchase option is invoked before the end of the term.</u>
5. The lease term shall have a 24 month automatic conditional option to extend in the event the property or the buyers do not qualify for other financing.

    . . . .

11. A payment of the remaining balance shall be required at the end of [the] 36 month term or the 60 month with the extension.  The seller may refuse any partial payment.[2]

Read together, there is no ambiguity: the Shriners had one opportunity to invoke the purchase option prior to or at the end of the lease term.  The Shriners exercised that option with the November 2015 PSA.  The PSA explicitly stated "this Agreement and the

---

[2] (Emphasis added.)

terms and conditions contained herein satisfy the Buyer's option to purchase." The Shriners defaulted on the PSA, and therefore the purchase option.[3]

Moreover, even if the lease option allowed the Shriners multiple opportunities to invoke the purchase option, there is no dispute that the lease option to purchase expired, and full payment was due by January 31, 2017. The Shriners neither exercised the option nor made full payment by the deadline.

The Shriners rely on Duprey v. Donahoe, 52 Wn.2d 129, 323 P.2d 903 (1958), for the proposition that exercising a purchase option merely requires notice, and since they served their complaint prior to the expiration of the deadline, they properly gave notice. The Shriners ignore that the contract in Duprey did not establish a deadline for final payment. The court held: "[w]hen, as here, no time is specified in the option agreement for final payment and delivery of the instrument of conveyance, the time of payment and delivery is a reasonable time after acceptance of the offer." Duprey, 52 Wn.2d at 135. Contrary to Duprey, the lease option and incorporated terms of the letter of intent make clear that full payment of the purchase price was due prior to January 31, 2017.

By the lease option's terms, the Shriners were required to exercise the option and convey payment in full and the $8,000 purchase fee by January 31, 2017. The lease option was automatically terminated.

---

[3] While it may be true that the PSA also stated that it "expressly revoke[d] and replace[d] all prior agreements between the parties except the [lease option]," we do not read this as implying that the Shriners had infinite attempts at exercising their purchase option until the lease term expired. Reading the PSA in the most logical manner, the only reason it references the lease option is so the Shriners could continue to inhabit the property and pay rent during the lease term.

B. Attorney Fees

The Shriners assign error to the trial court's decision to award attorney fees and cost below. As a general rule, appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a). The Shriners appeal challenges the trial court's original entry of attorney fees and the supplemental judgment for attorney fees and final judgment. There is nothing in the record before us demonstrating that the Shriners opposed any of these below. Therefore, the Shriners waived their arguments relating to attorney fees.

C. Attorney Fees on Appeal

Both the Shriners and Dufresne request attorney fees on appeal under RAP 18.1. Under RAP 18.1, a party may request reasonable attorney fees on appeal if an applicable law grants the party the right to do so. Both parties request attorney fees pursuant to the fee provision in the lease option. Appellate courts generally recognize a provision in a contract allowing attorney fees to include fees on appeal as well as at trial. Edmundson v. Bank of America, 194 Wn. App. 920, 932-33, 378 P.3d 272 (2016).

Because the lease option grants Dufresne the right to attorney fees, and because he prevails on appeal, we award attorney fees and costs subject to compliance with RAP 18.1.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Coburn, J._                 _Dwyer, J._