# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DP2 PROPERTIES, LLC, A
WASHINGTON LIMITED LIABILITY
COMPANY; GOLD MEDAL GROUP,
LLC, A WASHINGTON LIMITED
LIABILITY COMPANY; AND DENNIS
PAVLINA, AN INDIVIDUAL,

        Appellants,

        v.

STATE OF WASHINGTON, ACTING
BY AND THROUGH ITS
DEPARTMENT OF ECOLOGY, A
STATE AGENCY,

        Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 82046-0-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, C.J. — Dennis Pavlina and his two single member LLCs, DP2 Properties, LLC (DP2); and Gold Medal Group, LLC (GMG) (collectively Pavlina)[1] were required by a 2007 administrative order issued by the Department of Ecology (Ecology) to mitigate for wetland impacts caused by Pavlina's Battle Ground commercial development project. Pavlina appeals the trial court's order granting summary judgment and

---

[1] DP2 and GMG are LLCs solely owned by Pavlina. While recognizing that they are separate appellants, for simplicity we refer to them collectively as "Pavlina" absent times when distinction is necessary.

Citations and pin cites are based on the Westlaw online version of the cited material.

dismissing Pavlina's action for intentional interference with a business advantage or expectancy. Pavlina argues that the trial court erred in granting summary judgment because he offered sufficient evidence to establish a prima facie claim of tortious interference with a reasonable business expectancy. Because Pavlina failed to establish a reasonable business expectancy, summary judgment and dismissal were appropriate. We affirm.

FACTS

A party that fills wetlands for a development project must compensate for wetland loss through mitigation by restoring or preserving the ecological functions of other wetlands. RCW 90.48.020(3)(b); WAC 173-201A-020, -300 to -330. Ecology has jurisdiction over wetlands, including authorizing fill, approving mitigation, and enforcement through administrative orders and penalties. RCW 90.48.020, .120; Pac. Topsoils, Inc. v. Dep't of Ecology, 157 Wn. App. 629, 644, 238 P.3d 1201 (2010).

In early 2005, a dispute arose over the filling of several acres of wetlands during construction of the mixed-use development project Battle Ground Commerce, LLC (BGC) in Battle Ground, Washington. GMG, a corporation solely owned by Pavlina, undertook the project. After learning that GMG filled wetlands without authorization, but acknowledging that the development was important for the City of Battle Ground (City), Ecology began negotiations with Pavlina to implement mitigation measures for the filled wetlands.

In September 2005, negotiations between Ecology and Pavlina, BGC, and GMG, ended in an agreement (Agreement) that established a process for continuing to

develop BGC while identifying and implementing mitigation.  The final Agreement was assignable:

> This Agreement is assignable and shall run with the land and be binding upon and inure to the benefit of the parties, their respective heirs, successors, assigns and transferees.  This Agreement shall be recorded.

The Agreement also insulated Ecology from claims.  Pavlina and GMG, their heirs, assigns, or other successors in interest agreed to:

> Release and discharge [Ecology] and its officers, agents, employees, agencies and departments from all existing and future claims, damages and causes of action of any nature arising out of any decisions made by Ecology regarding [Battle Ground Commerce], including all claims for personal injuries, attorneys fees and costs to [Battle Ground Commerce], including those injuries and damages stated in the claims for damages previously filed (if any).

Pavlina did not record the Agreement.

Consistent with the Agreement, Pavlina submitted a wetland delineation report and mitigation plan to Ecology.  On September 20, 2007, Ecology issued Administrative Order No. 5087 (Order) approving Pavlina's mitigation plan, authorizing impacts to 37.1 acres of wetlands on the BGC Property, and requiring that GMG undertake 44.7 acres of wetland mitigation to compensate for those impacts.[2]

GMG was out of compliance with the Order over the next 8 years, including a failure to purchase 8 of the 44.7 acres of mitigation and to record a conservation covenant on the mitigation properties.  Ecology sent Pavlina multiple warning letters to attempt to remedy the violations without formal enforcement, but to no success.  On

---

[2] Pavlina asserts that Ecology cannot hold him personally liable for the BGC mitigation because his name is not included on the Order.  This assertion is incorrect.  Under the responsible corporate officer doctrine, Ecology could have held Pavlina personally liable for damages caused by his LLC.  See K.P. McNamara NW., Inc. v. Dep't of Ecology, 173 Wn. App. 104, 142, 292 P.3d 812 (2013).

June 13, 2013, Ecology issued a $9,000 penalty[3] against GMG and Pavlina. Pavlina did not appeal the penalty, and paid in full.

In the interim, Pavlina and three of his other LLCs[4] (Borrower LLCs) defaulted on their financial obligations for BGC. On April 29, 2014, Pavlina, his Borrower LLCs, and lender Regents Bank (Regents), executed a Settlement in Lieu of Deed Foreclosure (Settlement); neither GMG nor DP2 were party to the Settlement. In the Settlement, Pavlina and the Borrower LLCs conveyed to Regents the property and development rights associated with BGC. The Settlement stated:

> The conveyance of the Deed in Lieu Properties to [Regents] according to the terms of this [Settlement] is an absolute conveyance of all of Pavlina's right, title, and interest in and to the Deed in Lieu Properties in fact as well as form and was not and is not now intended as a mortgage, trust conveyance, deed of trust, or security instrument of any kind, and the consideration for the conveyance is exactly as recited herein and Pavlina [and his Borrower LLCs] have no further interest (including rights of redemption) or claims in and to any of the Deed in Lieu Properties or to the rents, proceeds, and profits that may be derived therefrom, of any kind whatsoever.

In the Settlement, Pavlina represented that:

> To Borrowers' and Guarantors' knowledge, there is not any contract, lease, or agreement, oral or written, or any amendment or supplement to any such contract or agreement, to which any of the Borrowers is a party that would be binding on Lender or any of the Deed in Lieu Properties after the Effective Date or that affects any of the any of the Deed in Lieu Properties.

Finally, Pavlina and the Borrower LLCs agreed that they "shall undertake no action that could result in a lien or other encumbrance being imposed on any of the [BGC properties]."

---

[3] Ecology can subject parties who are out of compliance with its administrative orders to penalties of up to $10,000 per day, per violation. RCW 90.48.144(3).

[4] These LLCs are Battle Ground Corporate Center, LLC; Battle Ground Village Development, LLC; and BGV Parcel 3, LLC; they are not a party to the Order nor to this appeal.

Meanwhile, Pavlina remained out of compliance with the Order. On September 16, 2014, Ecology sent Pavlina a warning letter contemplating a second penalty of $240,000. On the week of October 6, 2014, Ecology met with Pavlina on the BGC site to discuss mitigation. During the visit, Pavlina suggested that he was not solely responsible for mitigation, because of the assignability provision of the Agreement. Ecology explained that the Agreement was to develop a mitigation plan, and that it was the Order that alone controlled. On October 31, 2014, Pavlina informed Ecology that he had acquired the remaining mitigation properties through DP2, another entity solely owned by Pavlina. Because of Pavlina's compliance, Ecology did not issue the second penalty.

On March 11, 2015, Pavlina informed Ecology that the City approved him to record a covenant on the BGC parcels. On March 16, 2015, Christine Wamsley from Robert Olson Construction called Perry Lund, Ecology's Section Manager for its Southwest Regional Office's Shoreland and Environmental Assistance Program. Wamsley informed Lund that she was calling on behalf of owners and prospective buyers of the BGC parcels in relation to mitigation requirements at the BGC site. Lund asked that Wamsley request the information through e-mail, so that he could route it through a public records officer. Lund sent Wamsley documents related to Pavlina's mitigation, and informed her that Ecology did not intend to hold any future landowners accountable for the mitigation; the mitigation was Pavlina's responsibility alone.

On March 18, 2015, Pavlina, through DP2, recorded a conservation covenant (Covenant) on the BGC parcels that he had conveyed to Regents as part of the Settlement. The Covenant required owners of BGC parcels to ensure that "wetland

-5-

mitigation sites," remain undisturbed. The Covenant identified parcels as either "vested" or "unvested,"[5] and stated that purchasers of "unvested" parcels must pay Pavlina for "mitigation rights," or "[acquire] mitigation rights elsewhere" before development. The relevant provision states:

> This covenant only benefits the "Vested Parcels" as shown on Exhibit C, and any mitigation rights to the "Unvested Parcels", also identified on Exhibit C, are subject to the owners of those parcels reimbursing [Pavlina] for their pro rata assessment (using market rates) of these mitigation rights. Once owners of the Unvested Parcels have reimbursed [Pavlina] for their pro rata assessment of these mitigation rights, then such owner's parcels shall become vested in the mitigation rights approved by the Department of Ecology. If an owner of an Unvested Parcel acquires mitigation rights elsewhere, then such owner waives any mitigation rights as provided for herein.

Though the wetland impacts to BGC had taken place, the Covenant appeared to redirect mitigation costs or alternately, responsibilities, to subsequent owners of "unvested" parcels.

On April 2, 2015, Pavlina sent a copy of the Covenant to the City, asking that the City decline to issue development permits for the unvested BGC parcels unless new owners indicated that the parcels were clear of mitigation requirements. The City refused to enforce the Covenant, but told Pavlina that it would continue to discuss how to communicate Covenant information to prospective buyers.

In the week of April 13, 2015, Sam Crummett of the City contacted Rebecca Rothwell at Ecology, asking about the mitigation responsibilities on the BGC parcels. Ecology provided the City with a copy of the Order and informed them that Pavlina

---

[5] Neither vested nor unvested parcels contain wetlands. Pavlina's mitigation requirements were off-site, and BGC parcels were "shovel ready" for development.

alone was responsible for the BGC mitigation, and that the mitigation did not transfer to later owners.

In early June 2015, after confirming the BGC mitigation obligations with Ecology and the City, Regents and other new owners of BGC demanded that Pavlina remove the Covenant. Pavlina assented to their demands and removed the Covenant.

On December 28, 2015, Ecology issued an amendment to Order No. 5087 (Amendment). The Amendment authorized Pavlina to use the eight acres of mitigation properties that he purchased with DP2 to complete the Order's mitigation measures. The Amendment also incorporated a new mitigation plan and added DP2 and Pavlina as parties required to complete the mitigation.

GMG and DP2 appealed the Amendment to the Pollution Control Hearings Board (Board). On July 7, 2017, the Board reversed the Amendment in part because Ecology could not establish that Pavlina requested its issuance.

Pavlina continued to remain out of compliance with the Order's mitigation requirements. On August 23, 2017, Ecology issued Pavlina a notice of violation, informing him that he remained out of compliance with the Order, and threatening additional penalties. Pavlina ultimately complied, and on February 28, 2018, Ecology issued a new amendment to Order No. 5087 (Amended Order). The Amended Order incorporated the new mitigation plan, identifying GMG and DP2 as responsible parties for completing the mitigation. Pavlina did not appeal the Amended Order.

On June 18, 2018, Pavlina sued Ecology for interference with prospective business advantage or business expectancy, claiming that Ecology intentionally interfered when informing Wamsley and the City that the Order did not apply to them.

He also alleged that this interference prevented him from selling wetland mitigation credits to prospective buyers.[6]  Ecology moved for, and the trial court granted, summary judgment dismissing Pavlina's complaint.

Pavlina appeals.

ANALYSIS

A. Standard of Review

This court reviews summary judgment decisions de novo.  Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013).  "Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Int'l Marine Underwriters, 179 Wn.2d at 281.  The moving party has the initial burden of proving the absence of an issue of material fact.  Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).  When the moving party is a defendant who meets this initial showing, then the inquiry shifts to the plaintiff.  Young, 112 Wn.2d at 225.  If the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the trial court should grant the motion for summary judgment.  Young, 112 Wn.2d at 225.

On review, we must consider "the facts submitted and all reasonable inferences therefrom in the light most favorable to the nonmoving party."  Chelan County Deputy Sheriffs' Ass'n v. Chelan County, 109 Wn.2d 282, 294, 745 P.2d 1 (1987).  "Even where

---

[6] Pavlina favorably categorizes his mitigation obligations as "mitigation credits," but his categorization is incorrect.  Mitigation credits are valuable, Ecology-approved credits that are generated by voluntarily restoring wetlands.  The credits become part of a mitigation bank, where a party may purchase them in lieu of performing their own mitigation.  See generally, RCW 90.84.  Pavlina is not generating mitigation credits, he is attempting to bundle his own, neglected mitigation responsibilities into the Covenant and pass those responsibilities onto later purchasers of the BGC parcels.

the evidentiary facts are undisputed, if reasonable minds could draw different conclusions from those facts, then summary judgment is not proper." Chelan County, 109 Wn.2d at 295. A trial court's findings of fact are superfluous in summary judgment proceedings and have no weight on appeal. Chelan County, 109 Wn.2d at 294 n.6. A court must apply the standard of proof which will apply at trial when ruling on a motion for summary judgment. Gossett v. Farmers Ins. Co. of Washington, 133 Wn.2d 954, 973, 948 P.2d 1264 (1997).

      B. Prospective Business Advantage or Business Expectancy

Pavlina argues that Ecology interfered with his prospective business advantage or business expectancy by informing the new and prospective owners of BGC parcels, as well as the City, that he alone was responsible for the BGC mitigation. We disagree.

To prove interference with business advantage or expectancy, Pavlina must establish: (1) the existence of a valid business relationship or expectancy, (2) knowledge by the defendant of the relationship or expectancy, (3) intentional interference that causes termination of the relationship, (4) the interference was for an improper purpose or used improper means, and (5) resulting damages. Leingang v. Pierce County Med. Bur., 131 Wn.2d 133, 157, 930 P.2d 288 (1997). Pavlina's claim fails on the first element.

Pavlina incorrectly asserts that he has proven the existence of a valid business relationship or expectancy. A valid business expectancy includes "any prospective contractual or business relationship that would be of pecuniary value." Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 768, 436 P.3d 397 (2019). Pavlina primarily relies on the Agreement for the prospect that his mitigation requirements run

with the land, and that he could subsequently record the Covenant on the BGC parcels to receive reimbursement for or to reassign for his mitigation responsibilities. His reliance is misguided. It is Ecology's Order, not the Agreement, which governs enforcement. The Agreement required Pavlina to evaluate the impacts of the development and design a mitigation plan. The Order required that he fulfill the plan and perform the mitigation. The Order and its subsequent Amendment are directed at GMG and DP2, not Regents or any later owners of the BGC parcels.

Further, to the extent that Pavlina relies on the Agreement for a valid business expectancy, he neither recorded nor assigned it to any of the subsequent owners of the BGC parcels. Pavlina attempted to use the Covenant, not the Agreement, as his vehicle for reimbursement or reassignment of mitigation measures. Pavlina also neglects to highlight the provision in the Agreement that insulates Ecology from "causes of action of any nature" arising out of its decisions in respect to BGC, such as the present cause at issue.[7]

Pavlina also agreed that, as part of the Settlement, he "shall undertake no action that could result in a lien or other encumbrance being imposed on any of the [BGC properties]." The Covenant was such an encumbrance.

---

[7] Ecology correctly asserts that the panel may affirm summary judgment on this provision. Pavlina counters that the language "all existing and future claims, damages and causes of action of any nature arising out of any decision made by [Ecology] regarding the Projects" does not state all future Ecology decisions. This argument is disingenuous, as the language is broadly written to include all existing and future claims arising out of any decision, which includes a claim for interference with a business expectancy.

Pavlina also counters that preinjury releases do not extend to gross negligence or intentional torts. Ecology properly anticipated this argument, and correctly noted that a release can only be invalidated upon demonstrating evidence of gross negligence, nuisance, or willful and wanton misconduct. Boyce v. West, 71 Wn. App. 657, 663 n.6, 862 P.2d 592 (1993). Pavlina does not appear to have made such a demonstration.

Pavlina highlights that it was DP2 who recorded the Covenant on BGC parcels, and that neither DP2 nor GMG were party to the Settlement. Thus, he avers, DP2's recording of the Covenant does not violate the Settlement provision prohibiting encumbrances. Pavlina is correct—neither DP2 nor GMG were parties to the Settlement, because neither LLC had a property interest in the BGC parcels. Additionally, Pavlina and his Borrower LLCs conveyed all of their rights to title and development of the BGC parcels when they executed the Settlement. Considering the record reflects that no appellant has an interest in the BGC parcels, we fail to recognize how appellants can record a covenant on the parcels requiring reimbursement for mitigation measures. Such actions do not constitute a valid business expectancy.

For the reasons above, we hold that Pavlina failed to establish a valid business relationship or expectancy. Because of this deficiency, we need not address the remaining elements of his claim. The trial court did not err by granting summary judgment and dismissal of Pavlina's interference with business expectancy claim.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Chun, J._          _Dwyer, J._

-11-