187 P.3d 754 (2008)
TEAMSTERS LOCAL UNION NO. 117, a labor organization, Appellant,
v.
The STATE of Washington, DEPARTMENT OF CORRECTIONS, Respondent.
No. 60073-7-I.
Court of Appeals of Washington, Division 1.
April 7, 2008.
Publication Ordered July 18, 2008.
Spencer Nathan Thal, Tracey A. Thompson, Tukwila, WA, for Appellant.
Christina T. Sherman, Attorney at Law, Tacoma, WA, Kara Anne Larsen, Office of The Atty. General, Olympia, WA, for Respondent.
GROSSE, J.
¶ 1 A union has associational standing to bring an action on behalf of its members for wage claims where standing is in the interest of judicial economy and such claims are easily ascertainable. Here, the wages claimed by union members when on call for an emergency response team are easily ascertainable. The trial court erred in dismissing the action.

*755 FACTS

¶ 2 The Department of Corrections (DOC) is an agency of Washington State and operates the Monroe Correctional Complex (Monroe). Teamsters Local Union No. 117 (Union) is the certified bargaining representative of employees who work at DOC prisons, including the employees at Monroe who are members of the Special Emergency Response Team (SERT). A DOC policy directive required squad members of SERT to live within a 40-minute commute of the home facility and demonstrate flexibility and a desire to participate as squad members. SERT is deployed in response to a variety of emergencies at the prison. The teams, which were created in 1987, are called to assist with high risk transports, hostage situations and other high risk circumstances that require skilled emergency support. SERT employees were required to carry a pager while off duty to ensure they could be reached if the need arose.
¶ 3 In October 2004, SERT members filed a grievance because they were not paid while on call. As a result of that grievance, SERT members were no longer required to carry pagers except when placed on official standby status. From that time on, carrying pagers in other circumstances would be deemed voluntary. The Union filed this claim for wages for the time period that SERT members were on call prior to this change. There is no dispute that the collective bargaining agreement does not apply to these wage claims.
¶ 4 There are three basic scenarios in which SERT members can be called to respond to an event. First, when the employee is already on duty. Second, when DOC anticipates an event in which employees not scheduled for duty, but who may be needed, are designated to be on "standby." (While on "standby," employees are prohibited from drinking alcohol and are required to respond within one hour of being paged.) And the third situation is when an unanticipated event occurs, requiring additional SERT team members who are neither on duty nor on standby to respond. Under such circumstances, it is essential for DOC to be able to quickly contact the team members.
¶ 5 The frequency of the pages to SERT members is disputed. From DOC's perspective, there is no requirement that employees answer all pages. Moreover, DOC contends the pagers were provided for the convenience of SERT members, permitting the employees to go about their lives and receive a message if and when an emergency situation arose. According to DOC, team members have not been punished for failing to respond to a pager call. One of the original SERT members at Monroe, now an Associate Superintendent, asserted that during his tenure as a leader he never had to call all 12 members of the team. From SERT's perspective, however, team members were required to be in a constant state of readiness, maintain pager contact at all times, and respond immediately to any page. Monroe has used unannounced monthly pager drills to demonstrate the team's constant state of readiness. The time it took SERT members to respond was documented and, if a team member failed to respond in a timely fashion, such failure was addressed at the next full team training. The expectation was that a member should respond within 10 minutes of receiving the page.
¶ 6 DOC moved for summary judgment dismissal on the basis that the Union lacked standing, the time employees spent carrying a pager while off duty was not compensable as a matter of law, and further, if found to be compensable, the employees were not covered by the Washington Minimum Wage Act (MWA). The trial court granted DOC's motion for summary judgment dismissal. At the hearing, Judge Linda Krese directed the parties to argue only the standing issue. Thus, the trial court did not entertain any arguments on the remaining issues. The Union appeals, arguing both that it has standing and that there are factual issues to resolve warranting a remand.

ANALYSIS
Standing
¶ 7 In Hunt v. Washington State Apple Advertising Commission,[1]the United *756 States Supreme Court held that an association has standing to sue on behalf of its members when
(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[[2]]
The Hunt requirements permit a single plaintiff to adequately represent the interests of its many members in a single lawsuit thus avoiding repetitive and costly independent actions.
¶ 8 The parties do not dispute that the first two prongs of the Hunt test are satisfied here. (The individual members had standing to sue in their own right and the Union's interest in employee wages is paramount to its purpose.) It is the third prong that is at issue here. International Association of Firefighters, Local 1789 v. Spokane Airports[3] is dispositive. There, the Washington Supreme Court described the third prong as prudential, designed to maximize court efficiency.
¶ 9 DOC's contention that the third prong is not satisfied here because the damages cannot be proven without individual testimony of SERT members is without merit. In Spokane Airports, the Supreme Court stated:
Because the rule enunciated by . . . many federal courts is judicial and not based on constitutional requirements, we are not required to give it substantial deference. Instead, we find ourselves attracted to the approach taken by Division Three to the effect that there are instances where the lack of individual participation by an association's members is not fatal to the association's standing because the amount of monetary damages sought on behalf of those members is certain, easily ascertainable, and within the knowledge of the defendant. In our judgment, this pragmatic view is preferable to a rule that serves to automatically deny standing to an association that seeks monetary damages on behalf of its members without alleging that it has been injured or that it has an assignment of the members' claim.[[4]]
Here, the amount of wages sought by the Union on behalf of the SERT members is both easily ascertainable and within the knowledge of DOC. Since the SERT team carried pagers when off duty, the time for which the complaint seeks damages can easily be ascertained by subtracting the time the members of SERT were working regular shifts, overtime, on leave, or on official standby. Calculating the wages will then be nothing more than a mathematical exercise. For example, the Illinois Supreme Court's decision in International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security, found associational standing where wage claims could be calculated by a formula based on salary information to which defendant employer had access.[5]
¶ 10 The prudential nature of Hunt's third prong warrants our finding that the Union has standing. To hold otherwise might lead to twelve cases instead of one, burdening both the individual members and the court system. As noted in Spokane Airports:
If we reached the result advanced by Airport we would likely burden individual members of the employee association economically and would almost certainly burden our courts with an increased number of lawsuits arising out of identical facts. In short, we see little sense in an ironclad rule that has the effect of denying relief to members of an association based upon an overly technical application of the standing rules.[[6]]
*757 ¶ 11 DOC also argues that standing is precluded because the individual union members will need to be called as witnesses on the issue of liability. DOC confuses participation as witnesses with participation as necessary parties to ascertain damages. The employees are not necessary parties, neither are they indispensable parties. Here, the calculation of damages does not require individual determination and the liability issues, though of a factual nature, are common to all.[7] We refuse to adopt DOC's position that participation of an individual member as a witness abrogates the Union's standing to prosecute the employees wage claims.
Compensable Time
¶ 12 DOC contends that employees' time spent carrying a pager is not compensable as a matter of law. However, as noted in Chelan County Deputy Sheriffs' Association v. County of Chelan,[8] the determination of whether or not on-call time is compensable is determined by the parties' agreement; whether employees are required to remain in any particular place during on-call time; the degree to which employees are permitted to engage in their own activities during such time; and whether the employees' availability during on-call time is predominantly for the employees' or the employer's benefit.[9]
¶ 13 Here, the Union asserts that the on-call time was primarily for the benefit of the employer, arguing that the purpose of establishing the 12 member elite group was to provide DOC with reliable, trained personnel to respond to prison emergencies on a 24-hour basis and that this was accomplished through the use of the pager system. DOC argues that it had no expectation that SERT members would always respond to pages as team members were not required to carry the pagers at all times.
¶ 14 From June 2003 to November 2004, SERT members assert that they were frequently paged and often required to return to the facility or another location. Recognizing the invasiveness of the pager, the team leader established a paging priority system to negate the impact that the paging was having on the team members.
¶ 15 Here, there are material issues of fact that need to be resolved, rendering summary judgment improper.
Minimum Wage Act (MWA)
¶ 16 DOC next argues that if the time spent by the employees is deemed compensable, then the employees are not covered under the MWA.[10] The MWA requires that an employer must compensate its employees for all hours worked.[11] DOC argues SERT members are excluded from coverage under the MWA because they were not considered employees as defined by statute:
(5) "Employee" includes any individual employed by an employer but shall not include:
. . . ;
(j) Any individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties.[[12]]
DOC argues that because the time SERT members spent carrying a pager (and thus on call) would in fact be greater than the time spent in the performance of their regularly scheduled work hours, they are not covered by the MWA. We disagree.
¶ 17 The Washington Supreme Court in Berrocal v. Fernandez,[13] held that the question *758 of whether the "exclusion applies is a question of worker categorization rather than the compensability of any given hour in a worker's day."[14]Berrocal cites with favor this court's decision in Strain v. West Travel[15] for the proposition that the MWA exclusions were meant to apply to broad categories of workers based on the type of employment and not on the activity in which an employee is momentarily engaged. To hold otherwise, would create myriad accounting and other practical difficulties.[16] Thus, the focus must necessarily be on where the employees spend a "substantial" portion of their time. Substantial, however, can mean less than 50 percent. Here, SERT members spend a "substantial" portion of their time (regular 40-hour shifts) on active duty and are therefore covered by the MWA.
¶ 18 In conclusion, the Union has standing to bring the claims on behalf of the employees, the employees are covered by the MWA and there are factual issues to resolve regarding whether the on-call time is compensable. We reverse the summary judgment and remand for further proceedings.
WE CONCUR: APPELWICK and LEACH, JJ.
NOTES
[1] 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).
[2] Hunt, 432 U.S. at 343, 97 S.Ct. 2434.
[3] 146 Wash.2d 207, 45 P.3d 186 (2002).
[4] Spokane Airports, 146 Wash.2d at 215-16, 45 P.3d 186 (emphasis added).
[5] Int'l Union of Operating Eng'rs, 215 Ill.2d 37, 293 Ill.Dec. 606, 828 N.E.2d 1104, 1116 (2005).
[6] Spokane Airports 146 Wash.2d at 216, 45 P.3d 186.
[7] Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Brock, 477 U.S. 274, 287-88, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986).
[8] 109 Wash.2d 282, 745 P.2d 1 (1987).
[9] Chelan, 109 Wash.2d at 292-93, 745 P.2d 1.
[10] Chapter 49.46 RCW.
[11] See RCW 49.46.020 (setting minimum hourly wage).
[12] RCW 49.46.010(5)(j).
[13] 155 Wash.2d 585, 121 P.3d 82 (2005).
[14] Berrocal, 155 Wash.2d at 597, 121 P.3d 82.
[15] 117 Wash.App. 251, 70 P.3d 158 (2003).
[16] Berrocal, 155 Wash.2d at 595, 121 P.3d 82 (citing Strain, 117 Wash.App. at 255, 70 P.3d 158).