FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 13, 2020

~Stephu, C.J.~
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 13, 2020

~Susan L. Carlson~
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WASHINGTON STATE NURSES ASSOCIATION, | ) ) ) | No. 97532-9 |
| Respondent/Cross Appellant, | ) ) | |
| v. | ) ) | EN BANC |
| COMMUNITY HEALTH SYSTEMS, INC., d/b/a YAKIMA HMA, LLC, d/b/a YAKIMA REGIONAL MEDICAL AND CARDIAC CENTER, | ) ) ) ) ) ) ) | |
| | ) | Filed August 13, 2020 |
| Appellant/Cross Respondent, | ) ) | |
| VERONICA KNUDSON and BRIAN BRAEGGER, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

MONTOYA-LEWIS, J.—Washington State Nurses Association (WSNA)

seeks damages on behalf of its member nurses for unpaid working hours, overtime

hours, and missed meal periods. We are asked to decide whether an association has

standing to bring a claim on behalf of its members when it *must* rely on

representative testimony in order to establish the amount and extent of damages that its members suffered. Since these damages established through representative testimony were not certain, easily ascertainable, or within the knowledge of the defendant, we hold that WSNA does not have standing to bring such a claim.

## I. FACTS AND PROCEDURAL HISTORY

A.      Factual Background

Yakima HMA LLC (Yakima Regional) is a general medical and surgical hospital in Yakima, Washington. Yakima Regional has a home care agency, which includes its home health and hospice programs. The home care agency provides home care services to individuals with postsurgical needs, long-term health conditions, and terminal illnesses. The nurses who work in the home health and hospice programs travel individually to patients' residences to provide home care nursing services. WSNA is a statewide labor organization and was the exclusive bargaining representative of Yakima Regional's home care and hospice nurses during the time period at issue.

Yakima Regional assigned home health and hospice nurses to territories with the goal of aligning patient assignments with the geographic area in which the nurse lived. The nurses had a relatively independent schedule but had productivity requirements set by Yakima Regional. The nurses were required to reach five to six "stats" per day, which included the time it took to drive to the patient, the patient

visit itself, the documentation and charting, and any follow-up coordination with other services—such as pharmacy, occupational therapy, or chaplaincy. Documentation and charting needed to be finished for each visit within 24 hours so that on-call nurses could access the patient charting information. Yakima Regional expected nurses to meet the productivity requirements—five or six stats—within an 8-hour working day. If a nurse needed to work overtime in order to complete their stats, they were required to call in advance to seek overtime approval. Additionally, the nurses were entitled to a 30-minute unpaid, uninterrupted meal period.

Nurses regularly could not complete the productivity requirements within an 8-hour working day and often spent hours on documentation and charting at the end of the day, during their lunch time, and in the early mornings. Nurses were also rarely able to take a 30-minute uninterrupted meal break. When nurses tried to request overtime to complete their charting, the request was often denied. On the rare occasion when overtime was approved, it was for only a number of hours insufficient to finish the documentation. Multiple nurses attempted to discuss the impossible productivity requirements with their supervisor, but they were told it was Yakima Regional's expectation that nurses finish their five or six stats in an 8-hour working day.

In April 2015, WSNA filed suit against Yakima Regional on behalf of 28 home health and hospice nurses seeking damages under the Washington Minimum

Wage Act[1] and the industrial welfare act[2] for unpaid working hours, overtime hours, and missed meal periods.

B.    Procedural History and Trial

In 2017, the parties filed cross motions for summary judgment. WSNA sought partial summary judgment on liability, and Yakima Regional sought summary dismissal on the grounds that WSNA lacked associational standing to bring its claim. The trial court denied both motions, but it certified its order denying Yakima Regional's motion for summary judgment for interlocutory discretionary review under RAP 2.3(b)(4) because there was substantial ground for a difference of opinion on the standing issue. The Court of Appeals denied the motion for discretionary review because more factual development was necessary to determine what evidence WSNA would rely on to establish damages.

A nine-day bench trial began in January 2018. At trial, nine nurses testified about the work environment, the hours they worked without pay, and missed meal periods. Some nurses testified that they worked one or two hours of overtime each day, while others testified they worked up to six hours of overtime each day in order to finish documentation. The nurses also testified that they rarely got a 30-minute

---

[1] Ch. 49.46 RCW.

[2] Ch. 49.12 RCW; WAC 296-126-092(1)-(2) ("Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift.").

uninterrupted meal period. They told their supervisors repeatedly about this required overtime work: verbally, in arranged meetings, in exit interviews, and in notations on their daily time sheets. Despite this notice, Yakima Regional supervisors often denied the nurses' requests for overtime, and the policies surrounding reporting time did not change.

WSNA presented a damages calculation chart that was created by its expert, Dr. Jeffrey Munson. This chart contained the total amount of back pay and the total interest owed to the nurses, assuming varying rates of off-the-clock hours worked and varying rates of missed meal breaks. All of the data that Dr. Munson used to develop the chart came from Yakima Regional's payroll wages and hours records. However, in order to use the chart and come to a final damage calculation, the court itself would need to decide the average hours of overtime the nurses worked and the percentage of meal periods the nurses missed. The court was required to weigh the testimony of the nurses and make these two separate rate determinations as the finder of fact.

In its findings of fact and conclusions of law, the trial court held that WSNA had associational standing to bring the claims. Based on the nurses' testimony, the court found that the nurses missed 90 percent of their statutorily mandated meal periods. Clerk's Papers (CP) at 2891. The court also found that "[f]rom April 21, 2012, through April 1, 2014, the nurses were not paid for 22% of the hours they

worked" and "[f]rom April 2, 2014 through August 31, 2017, the nurses were not paid for 37.5% of the hours they worked." CP at 2893.[3] The court found total damages to be $1,447,758.09 and awarded WSNA attorney fees and court costs. Finally, the court ruled that Yakima Regional knowingly and willfully deprived the nurses of their pay and ordered double damages pursuant to RCW 49.52.070.

Yakima Regional appealed, arguing, among other things, that WSNA lacked associational standing; WSNA cross appealed.[4] Division Three of the Court of Appeals certified the case for transfer to this court, which we accepted.

## II. ANALYSIS

This decision does not condone Yakima Regional's employment practices that the nurses testified to throughout trial. The nurses' claims are not without merit. WSNA chose to bring these claims using associational standing, which has limitations under our case law. Associational standing requires that damages be certain, easily ascertainable, and within the knowledge of the defendant. We conclude that WSNA's claim cannot survive this test for damages. We decline to

---

[3] In 2014, Community Health Systems acquired the home care agency. The trial court's determination that the damages were distinct for two different time periods reflects the 2014 change in ownership and procedures. Report of Proceedings at 1885-86.

[4] Because we decide the case on the standing issue, we do not reach Yakima Regional's other arguments. For the same reason, we do not reach WSNA's cross appeal regarding prejudgment interest. Further, because we reverse the trial court as to the standing issue, WSNA is not entitled to attorney fees under RAP 18.1 and RCW 49.46.090(1), 49.48.030, or 49.52.070.

make an exception to this test in order to allow representative testimony to establish damages in wage and hour claims.

A.     Associational Standing

WSNA lacks associational standing in this case because the damages established through representative testimony are not certain, easily ascertainable, and within the knowledge of the defendant. In general, cases should be brought and defended by the parties whose rights and interests are at stake. *Riverview Cmty. Grp. v. Spencer & Livingston*, 181 Wn.2d 888, 893, 337 P.3d 1076 (2014).  However, an association has standing to bring suit on behalf of its members when "(1) the members of the organization would otherwise have standing to sue in their own right; (2) the interests that the organization seeks to protect are germane to its purpose; and (3) neither claim asserted nor relief requested requires the participation of the organization's individual members."  *Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207, 213-14, 45 P.3d 186 (2002) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)). The first two prongs of our associational standing test are constitutional. *Id.* at 215. The third prong is prudential and is designed to serve administrative

convenience and efficiency. *Id.* The parties do not dispute that the first two prongs are satisfied here.

Under the third prong, the type of relief a plaintiff-association seeks often dictates whether an individual member's participation is necessary. *Hunt*, 432 U.S. at 343. When an association seeks an injunction or some form of prospective relief, associational standing is more easily established because the relief is uniform. *See id.* In an injunction case, "'the remedy, if granted, will inure to the benefit of those members of the association actually injured.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 515, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). In *Riverview Community Group*, we noted that the equitable or injunctive relief requested did not require the individual participation of the members. 181 Wn.2d at 894. Although individual members may be called on to testify regarding liability, the viability of the claim does not necessarily depend on the participation of each member, and, if successful, all benefit equally. *See id.* Permitting associational standing when seeking uniform relief serves the third prong's purpose of "'administrative convenience and efficiency.'" *Firefighters*, 146 Wn.2d at 215 (quoting *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996)).

Damages claims pose a much more difficult problem. Associational standing is improper when the injury suffered "is peculiar to the individual member

concerned, and both the fact and extent of injury would require individualized proof." *Warth*, 422 U.S. at 515-16. Central to this proposition is that "'claims for monetary relief necessarily involve individualized proof and thus the individual participation of association members.'" *Firefighters*, 146 Wn.2d at 215 (quoting *United Union of Roofers, Waterproofers & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990)).

In *Firefighters*, we discussed the scope of associational standing and when an association may bring a suit for damages on behalf of its members. Federal courts do not allow standing for an association to seek damages on behalf of its members because a claim for member damages requires individual proof and member participation. *Id.* at 214-15. However, we recognized that if we adhered strictly to the federal standard, "we would likely burden individual members of the employee association economically and would almost certainly burden our courts with an increased number of lawsuits arising out of identical facts." *Id.* at 216. Therefore, we decided on a practical limitation to the strict damages rule. If the damages are "certain, easily ascertainable, and within the knowledge of the defendant," then the association may proceed because the "individual association member's participation is not necessary to prove the damages." *Id.* at 215-16. Under this framework, an association can bring a claim for damages to individual members and satisfy the

third prong of the associational standing test only if the damages are certain, easily ascertainable, and within the knowledge of the defendant.[5]

We concluded that the union in *Firefighters* had standing to pursue the damages claim on behalf of its members. *Id.* at 217. There, a union sought the matching contributions that an airport paid into its employees' Social Security and Medicare accounts. *Id.* at 211-12. The airport matched employee contributions dollar for dollar and had already refunded the employees' initial contribution. *Id.* We recognized that once the legal question of liability was decided, the "amount of monetary relief requested on behalf of each employee [was] certain, easily ascertainable, and within the knowledge of [the employer]" because the exact amount of relief due to each individual employee—the dollar for dollar match—was known and no speculation on the part of the trier of fact would be necessary. *Id.* at 216.

Similarly, in *Teamsters Local Union No. 117 v. Department of Corrections*, 145 Wn. App. 507, 513, 187 P.3d 754 (2008), the Court of Appeals allowed

___

[5] The dissent focuses on the fact that associational standing hedges against the risk of retaliation against a named plaintiff. Dissent at 2-3. When damages are certain, easily ascertainable, and within the knowledge of the defendant, a member can still mitigate the risk of retaliation by pursuing their claims through their association. However, if the damages are not certain or easily ascertainable, the persuasive value of remaining unnamed diminishes. If a finder of fact must determine the extent and amount of damages, they must discern who is damaged and by how much. Anonymity may not be practicable in these determinations.

associational standing for a damages claim for unpaid on-call wages. There, the Department of Corrections (DOC) required that Special Emergency Response Team (SERT) members carry a pager while off duty to ensure they could be reached if the need arose. *Id.* at 510. The court recognized that calculating SERT members' unpaid on-call wages was certain, easily ascertainable, and within the DOC's knowledge because the SERT team was required to be on call at *all times they were not on active duty*. *Id.* at 513. The damages could be easily ascertained by subtracting the time the members were on shift, on overtime, on leave, or on official standby from a 24-hour period. *Id.* Proving damages did not require the individual participation of the members; it was "nothing more than a mathematical exercise." *Id.* Again, no speculation by the trier of fact was necessary in that situation.

WSNA argues that *Pugh v. Evergreen Hospital Medical Center*, 177 Wn. App. 363, 312 P.3d 665 (2013), is dispositive of the associational standing issue. However, *Pugh* is distinguishable from this case. In *Pugh*, the association and employer stipulated as to how damages would be calculated and entered into a settlement agreement, so no speculation by the trier of fact was necessary.

In *Pugh*, WSNA brought an associational case against Evergreen Hospital on behalf of its member nurses seeking injunctive relief and back pay for missed rest breaks. *Id.* at 365. After WSNA and Evergreen entered into a settlement agreement, the nurses sought to invalidate the agreement based in part on the argument that

WSNA lacked standing. *See id.* at 368-69. The Court of Appeals held that WSNA had associational standing, stating, "WSNA need show only that it was prepared to establish damages that did not require participation of the individual members." *Id.* at 368. In that case, the parties agreed on the methodology to reach the settlement and no court was required to make factual findings as to the rate at which nurses missed breaks. *Id.* at 368 n.8 ("[T]hey used the number of hours worked per week over the alleged time period, the hourly rate, and the number of breaks to which they were entitled."). The court noted that WSNA and Evergreen "in fact determined damages owed to the nurses for the settlement agreement without requiring the participation of the individual nurses" and that "WSNA's lawsuit also sought injunctive relief, which does not require proof of individual damages." *Id.* at 368.

In this case, there is no agreement between the parties on damages, and the rate of unpaid overtime and missed meal breaks could be decided by a finder of fact only after hearing from individual nurses at trial and then applying an extrapolation based on disputed expert testimony. Further, the nurses do not seek injunctive relief. *Pugh* does not dictate the outcome in this case.

Here, damages were established by the individual testimony of nurses and the trial court's speculative determinations. The trial court determined damages after listening to individual testimony from nine nurses. The nurses' representative testimony determined the percentage of missed meal breaks and percentage of hours

worked without pay. WSNA presented a chart to calculate damages, but to make use of the chart, the trial court had to make factual findings after trial about the percentage of missed meal periods and the percentage of hours worked without pay. Unlike in *Firefighters*, 146 Wn.2d at 216, where the damages were known to both parties, or *Teamsters*, 145 Wn. App. at 513, where the calculation of damages was a simple mathematical exercise, here the damages were unknown until after trial and the trial court's order. No mathematical formula could be applied until the trial court, as fact finder, ruled on the extent of the damages based on its understanding of the nurses' and expert's testimony. Damages were not certain: it took an entire trial to ascertain their extent, and even then, the damages were speculative and an approximation. WSNA's claim for damages on behalf of their members fails the third prong of the associational standing test because the damages are not certain, easily ascertainable, or within the knowledge of the defendant.

The dissent's reading of the third prong of the associational standing test would undermine our decision in *Firefighters*. First, the dissent suggests that whether individual participation of the association's members is necessary under the third prong is determined by whether the individual injured is an indispensable party. Dissent at 5. However, this limited definition of participation cannot be squared with our rule in *Firefighters*. Under the Civil Rules, if a party is indispensable and cannot be joined, the case is dismissed. CR 19(b). If associational standing is proper except

when the individual members are indispensable parties, then associational standing is *always* proper in damages cases. This rule would eclipse our decision in *Firefighters*.

The dissent also claims that our decision fails to account for a key purpose of standing, to ensure the adversarial relationship between the parties. Dissent at 9. We disagree. The parties are still adverse when the damages are certain, easily ascertainable, and within the knowledge of the defendant. The adverseness will likely focus on liability, rather than conflicting evidence regarding the amount or extent of damages, which serves the purpose of our rule as laid out in *Firefighters*— to allow associations to bring damages claims on behalf of their members when individual member participation is not required. 146 Wn.2d at 216. The dissent's argument that there is no adverseness when damages are certain, easily ascertainable, and within the knowledge of the defendant is an argument against *Firefighters* itself. However, we were not asked to overturn, nor do we consider overturning, *Firefighters*.

Notably, WSNA does not argue that the damages were certain or easily ascertainable. WSNA relies on language from *Pugh* that suggests that in wage and hour cases, the third prong of the associational standing test can be satisfied through representative testimony. For the reasons stated below, we reject the invitation to alter or create an exception to the third prong of the associational standing test.

14

B.      Representative Testimony

Relying on *Pugh*, WSNA argues for more lenience to allow representative testimony to prove damages in wage and hour cases. Specifically, *Pugh* states:

> Our courts have recognized that in wage and hour cases where employers have failed to keep adequate records, damages may be established by "just and reasonable inference." Such inferences can be established by "representative testimony[]" . . . . Similarly here, representative testimony from each department could serve as proof of the damages.

177 Wn. App. at 368 (footnote omitted) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988)).

Representative testimony is a well-established tool in collective and class actions brought under wage and hour laws. WSNA argues that the use of representative testimony for wage and hour associational cases is proper. Amici, Washington Employment Lawyers Association and the Washington State Labor Council, support that view, arguing that the same objectives the third prong of the associational standing test serves, convenience and efficiency, also underlie Washington's class action procedures.

We reject WSNA's invitation to adopt this more lenient standard in associational standing cases because it offers neither the protections built into the current test nor the procedural protections built into class actions and collective actions under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219.

The use of representative testimony in order to establish the extent of damages is inappropriate in associational cases.

The requirement for certain and easily ascertainable damages provides protection to both plaintiffs and defendants. Damages that are certain, easily ascertainable, and within the knowledge of the defendant ensure that the associational plaintiff does not lack "evidence necessary to show the harm with sufficient specificity." *Local 751*, 517 U.S. at 556. While representative testimony has long been allowed in class action suits, existing protections for plaintiffs in class action suits do not exist in associational standing cases. Damages recovered by an association are awarded to the association, not the association's members. Class actions ensure that damages are paid to association members; here, no such assurances exist. *See id.* Damages that are certain and easily ascertainable protect an association member's individual interest in an associational standing case because their interest is certain and requires no speculation to determine.

Protections are also built into the procedures of the class action rules under CR 23 and in collective actions under section 216 of the FLSA. *See* 29 U.S.C. § 216(b)-(c). Before a class action can proceed, CR 23 requires that a court determine whether a class action is the proper route to maintain the suit. CR 23(c)(1). The court may certify the class after a showing that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the

16

class, (3) the claims or defenses of the representatives are typical of the class, and (4) the representatives will fairly and adequately protect the interests of the class. CR 23(a). Class actions seeking damages must establish that common questions of law or fact predominate. CR 23(b)(3). CR 23 requires notice to class members seeking damages and requires court approval for dismissal or settlement agreements. CR 23(c)(2), (e). Moreover, class actions allow for motions to decertify after evidence is heard. *See Miller v. Farmer Bros. Co.*, 115 Wn. App. 815, 820, 64 P.3d 49 (2003) (courts review class certification decisions liberally because "the class is always subject to later modification or decertification by the trial court").

Section 216 of the FLSA requires that plaintiffs be "similarly situated" and has an opt-in provision for affected plaintiffs. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018); *see also Ho Fat Seto*, 850 F.2d at 589. It also allows defendants to move for decertification at a later stage. *Campbell*, 903 F.3d at 1101-02. Specifically, section 216(b) does not allow representative claims; instead, each plaintiff must be a named party through the opt-in procedures. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. __, 136 S. Ct. 1036, 1043, 194 L. Ed. 2d 124 (2016). Alternatively, under section 216(c), the secretary of labor can bring an FLSA enforcement action and present testimony that is "fairly representational" of other employees in order to obtain relief. *Reich v. S. Md. Hosp., Inc.*, 43 F.3d 949, 951 (4th Cir. 1995); *see also Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793-94 (1st Cir.

1991) (discussing the bounds of fairly representative testimony). Any money recovered by the secretary of labor on behalf of an employee is held in a separate fund and paid directly to the employee; any sums not paid out to employees roll into the Treasury of the United States as miscellaneous receipts. 29 U.S.C. § 216(c). The secretary of labor also supplements employee testimony with its own investigation of the employer. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013).

These procedural protections exist in a class action or collective action to ensure a balance between protecting the interests of defendants and ensuring plaintiffs have a clear path to recovery. The class has been certified before testimony is heard. The defendant can move for decertification if the testimony is not representative. In the FLSA context, the circuits rely on the secretary of labor and their investigations to ensure that the testimony will indeed be representative, and courts require the secretary to show that the testimony is "fairly representational." *See Ho Fat Seto*, 850 F.2d at 589 (relying on the secretary's representations); *Reich*, 43 F.3d at 951 ("Although the Secretary's initial burden under *Mt. Clemens* is minimal, it is not non-existent."). Plaintiffs are protected by notice and are able to opt out of or opt in to the suit. Further, money recovered by the secretary of labor is paid out to the employees, and the FLSA discusses what happens with excess funds that are not distributed. These procedures ensure that representative testimony is, in

fact, representative of the plaintiffs' injuries while also protecting the plaintiffs' individual interests in the claims and damages recovered.

Associational standing cases do not have the same protections. Associational cases have no certification process to assess commonality and typicality at the beginning of the suit or a requirement that the common issues predominate. There is no notice or opt-out requirement to benefit plaintiffs. Courts do not have to approve settlement agreements that associations come to on behalf of their members, nor is there a procedure for ensuring that the money an association collects makes its way to the injured members. WSNA does not offer a test or limiting principle that would address the absence of these protections. As a result, we protect association members in associational cases that seek damages by requiring that the damages are certain, easily ascertainable, and within the knowledge of the defendant.

Additionally, an expansion of standing would not necessarily serve the values of convenience and efficiency that the prudential nature of the third prong seeks to advance. WSNA does not address how standing could be determined early on in litigation. As discussed above, associational cases do not have a certification process at the start of litigation to determine whether it is the appropriate route to bring the claim. Instead, an expansion would leave courts guessing about whether an association has standing at the beginning of a case and would often leave the determination until after a trial.

This case exemplifies this problem. The court had to wait until a nine-day trial was complete and it had heard the representative testimony of 9 of the 28 nurses to see if they adequately established the average rates of unpaid time and missed meal periods before it could decide if the association had standing. This process would have occurred *before trial* in the other avenues for recovery discussed above.

Other routes to collective action against the egregious conduct of this employer were not foreclosed for the nurses. If no other such route existed, the prudential nature of the third prong might be served by expanding its application. However, it is undisputed that the nurses could pursue a class action claim against Yakima Regional. The dissent suggests that our above observation precludes an injured party from proceeding with an associational standing claim when a class action is available. Dissent at 8. We do not so hold. The cause of action remains up to the litigants; class actions are an option under circumstances like the instant case, but they are also available when all of the elements of associational standing are met. Egregious employment practices, like the practices that the nurses testified about in this case, should be confronted. We do not state that redress is not available; we state merely that an associational standing case was not the proper route to seek that redress.

We decline to alter the third prong of the associational standing test in wage and hour cases. We hold that the third prong of the associational standing test—

20

"neither claim asserted nor relief requested requires the participation of the organization's individual members"—is met in a claim for damages when the damages are "certain, easily ascertainable, and within the knowledge of the defendant"; uncertain damages established through representative testimony do not meet that standard. *Firefighters*, 146 Wn.2d at 214-16.

## III. CONCLUSION

An association has standing to bring a claim for damages on behalf of its individual members if the damages are certain, easily ascertainable, and within the knowledge of the defendant. The damages in this case were not certain or easily ascertainable. WSNA could not satisfy the third prong of our associational standing test, and therefore lacked standing to bring the claim. Accordingly, we reverse the trial court and dismiss the case.

_____
Montoya-Lewis, J.

WE CONCUR:

_____     _____
Stephens, C.J.

_____     _____

_____     _____
Madsen, J.

_____     _____
Owens, J.                          Wiggins, J.P.T.

No. 97532-9

YU, J. (dissenting) — The doctrine of standing acts as a gatekeeper that determines who can and cannot access justice. Courts have long recognized various types of third party standing to ensure that meritorious claims may be heard, despite the barriers to justice that injured individuals may face when seeking to obtain justice on their own behalf. The third party standing doctrine at issue in this case is associational standing, a well-established doctrine that is necessary to ensure there is a path to justice for individuals who might lack the resources or expertise to litigate their cases individually, or who might face retaliation from being a named plaintiff.

I would hold that the nurses employed by Yakima HMA LLC (Yakima Regional) face such barriers to recovery on their wage and hour claims and the Washington State Nurses Association (WSNA) has associational standing to bring

those claims on their behalf. The majority's holding to the contrary takes an overly restrictive view of associational standing that is not required by our precedent and that contravenes the purposes of judicially imposed limits on associational standing. Restricting the availability of associational standing limits the opportunity to be heard, and thus, I must respectfully dissent.

ANALYSIS

A. Associational standing

Standing asks "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Associational standing has its roots in the civil rights movement, in a case involving the State of Alabama's efforts to obtain the names and addresses of directors, staffers, and members of the National Association for the Advancement of Colored People (NAACP). *Nat'l Ass'n for Advancement of Colored People v. Alabama ex rel. Patterson*, 357 U.S. 449, 452-53, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958). The NAACP refused to produce this information, citing threats of physical violence and reprisals that its members would face. *Id.* at 453, 462-63. Rather than requiring the NAACP members to bring claims in their own names (which would have required disclosure of the very information they sought to protect), the United States Supreme Court permitted the NAACP to bring a claim asserting its members' First Amendment rights, without

2

requiring any showing of injury to the NAACP itself. *Id.* at 458-60. This seminal

case represents the foundations of the associational standing doctrine—a method of

allowing the injured to seek justice while mitigating the risk of retaliation, and a

recognition by the courts of associations as vehicles for shared interests.

Building on this precedent, the United States Supreme Court formally

recognized and refined the modern doctrine of associational standing in the 1970s.

*See Warth*, 442 U.S. 490; *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S.

333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). These cases gave rise to a three-

pronged analysis for assessing associational standing (the *Hunt* test), which this

court adopted in 2002. *See Int'l Ass'n of Firefighters, Local 1789 v. Spokane

Airports*, 146 Wn.2d 207, 45 P.3d 186 (2002). The *Hunt* test provides that an

association has standing to bring suit on behalf of its members when "(1) the

members of the organization would otherwise have standing to sue in their own

right; (2) the interests that the organization seeks to protect are germane to its

purpose; and (3) neither claim asserted nor relief requested requires the

participation of the organization's individual members." *Id.* at 213-14.

As the majority notes, it is undisputed that prongs (1) and (2) of the *Hunt*

test are met here. Majority at 7-8. The only prong at issue here is prong (3), a

judicially imposed prudential standard intended to serve interests such as

"promot[ing] adversarial intensity," preventing a case from proceeding to trial

3

without sufficient evidence, "hedg[ing] against any risk that the damages recovered by the association will fail to find their way into the pockets of the members," and focusing on "administrative convenience and efficiency." *United Food & Commercial Workers Union Local 751 v. Brown Grp. Inc.*, 517 U.S. 544, 556-57, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996); *see also Firefighters*, 146 Wn.2d at 215. Because this purely prudential prong has no basis in the state or federal constitution, it may be refined, limited, and even eliminated by the courts or the legislature to ensure that the limits on associational standing serve their intended purpose without arbitrarily or unnecessarily restricting access to justice in meritorious cases. *Local 751*, 517 U.S. at 558; *Firefighters*, 146 Wn.2d at 215.

The ultimate question in analyzing whether an associational standing claim survives the third *Hunt* prong is "'whether the circumstances of the case and the relief requested make individual participation of the association's members indispensable.'" *Firefighters*, 146 Wn.2d at 215 (quoting *Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*, 103 Wn. App. 764, 770, 14 P.3d 193 (2000)). If so, then associational standing cannot be found. However, "[w]e have never held that 'testimony' is the equivalent of 'participation' for the purposes of the third prong of the standing analysis." *Riverview Cmty. Grp. v. Livingston*, 181 Wn.2d 888, 894 n.1, 337 P.3d 1076 (2014). Equating the two "would not further the purpose of the third prong." *Id.*; *see also Teamsters Local Union No. 117 v.*

*Dep't of Corr.*, 145 Wn. App. 507, 513-14, 187 P.3d 754 (2008).  Instead,

"participation" refers to "the individual participation of each injured party

indispensable to proper resolution of the cause."  *Warth*, 442 U.S. at 511.  Thus,

the question addressed by the third prong of the *Hunt* test is whether each allegedly

injured person is an indispensable party to the just resolution of the case.

 The majority is correct that the third *Hunt* prong places limits on

associational standing to bring claims seeking monetary damages rather than

injunctive relief because monetary damages "may vary from [person] to [person]."

*Firefighters*, 146 Wn.2d at 214.  The majority also correctly recites the rule that

Washington courts allow associational standing to seek monetary relief when the

damages requested are "certain, easily ascertainable, and within the knowledge of

the defendant."  *Id.* at 215-16.  However, the majority's strict and rigid application

of that rule here is not required by our precedent, does not serve many of the

purposes for limiting associational standing, and unnecessarily prevents WSNA

from seeking access to justice on its members' meritorious claims.

B. WSNA has met Washington's associational standing requirements

 Even though testimony is not the same as participation for purposes of the

third *Hunt* prong, the majority holds that WSNA has no standing in this case

because the need for representational testimony means the damages were not

"certain, easily ascertainable, and within the knowledge of the defendant."  *Id.*

However, we have never held that this requirement prohibits all fact-finding or mathematical formulation of damages. And in cases like this one, where the dispute over damages is attributable to the defendant's own failure to comply with its duty to keep accurate records of its employees' hours, the need for representational testimony to establish damages should not be an automatic barrier to associational standing.

"[T]he fact that the parties disagree about the amount of damages does not mean that there is no ascertainable amount of damages." *Pugh v. Evergreen Hosp. Med. Ctr.*, 177 Wn. App. 363, 368, 312 P.3d 665 (2013), *review denied*, 180 Wn.2d 1007 (2014). In cases such as this, where the amount of damages is disputed due to lack of (or falsified) records kept by the employer, representative testimony may be the only way to establish damages. Clerk's Papers (CP) at 2888; *Pugh*, 177 Wn. App. at 368. In such cases, the employer's failure to keep adequate records is not fatal to establishing standing in wage and hour cases because damages can be established by "'just and reasonable inference'" through "'representative testimony.'" *Pugh*, 177 Wn. App. at 368 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988), *cert. denied*, 488 U.S. 1040 (1989)). To hold otherwise would serve only to encourage employers to

falsify or fail to keep records, in the hopes of avoiding meritorious litigation from injured employees who face barriers to bringing claims in their own names.

Contrary to the majority's assertion, holding that WSNA has associational standing in this case would not undermine *Firefighters* but would simply account for a situation not presented by *Firefighters*. In this case, representational testimony was already necessary to establish Yakima's practice of willfully failing to pay nurses for all their hours worked. *See* majority at 3-4. The fact that some of the testimony also touched on the amount of damages, and that the trial court considered that testimony due to Yakima's own failure to keep accurate records, is not an automatic barrier to associational standing. WSNA offered representative testimony to establish damages by just and reasonable inference because Yakima Regional failed to keep accurate records of hours worked. CP at 2888. WSNA also provided an expert witness who developed a chart to calculate damages based on percentages of missed breaks and meal periods. After engaging in its own calculation of damages based on the representative testimony and other evidence presented, the trial court used this chart as a reference point to verify the accuracy of its calculation. Though the amount in damages may not have been as obvious as it was in *Firefighters*, it was nevertheless certain, easily ascertainable, and within the knowledge of the defendant.

C.     The majority's refusal to recognize WSNA's standing in this case does not advance the purposes underlying the limits on associational standing

Finally, the majority justifies its strict reading of the third *Hunt* prong by pointing to the purposes of limits on associational standing and the procedural protections provided by other avenues to relief, such as class actions. However, this court has never imposed an "ironclad rule that has the effect of denying relief to members of an association based upon an overly technical application of the standing rules." *Firefighters*, 146 Wn.2d at 216. We should not adopt such an ironclad rule now because doing so would economically burden individual members of the association and burden our courts with cases containing the same allegations, arguments, and evidence.

To the extent that the majority suggests the nurses should have pursued a class action, or that the availability of a class action should preclude associational standing, the United States Supreme Court discussed exactly how the conflation of associational standing and class actions fails to recognize the special features that distinguish the two:

> While a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common claims, an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital. "Besides financial resources, organizations often have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack." Note, From Net to Sword: Organizational Representatives Litigating Their Members' Claims,

8

> 1974 U. Ill. L. Forum 663, 669.  These resources can assist both courts and plaintiffs.

*Int'l Union, United Automobile, Aerospace & Agric. Implement Workers v. Brock*, 477 U.S. 274, 289, 106 S. Ct. 2523, 91 L. Ed. 2d 228 (1986).  It has never been a requirement that a party seeking associational standing must prove that a class action is unavailable or unduly burdensome.  Creating such a requirement in this case would not serve the prudential considerations of the third *Hunt* prong.

The majority also fails to account for a key purpose of standing requirements: ensuring that the parties are sufficiently adversarial such that the issues are fully and fairly litigated.  *Local 751*, 517 U.S. at 556.  The majority's reading of the third *Hunt* prong requires that there is *no* adversarial relationship between an association and a defendant for the association to establish standing, either because damages are simply a matter of mathematical calculation or because the parties have agreed on the question of damages.  *See* majority at 10-12 (citing *Firefighters*, 146 Wn.2d at 216; *Teamsters*, 145 Wn. App. at 513; *Pugh*, 177 Wn. App. at 368).  By rigidly requiring that the calculation of damages requires no fact-finding or credibility determinations, the majority effectively sets an associational standing requirement that is directly contrary to the underlying purposes of all standing requirements and, indeed, all judicially cognizable claims—truly adversarial parties.

In sum, I would hold that WSNA has satisfied the requirements for associational standing. The majority's holding otherwise does not serve the purposes of associational standing requirements, is not required by our precedent, and places unnecessary barriers in the nurses' path to justice for their meritorious claims. I would therefore affirm the trial court and hold that WSNA has standing in this case.

D.     Other issues on appeal

1.     The nurses' testimony was sufficiently representative

Yakima Regional argues that the trial court erred in finding that the testifying nurses provided sufficient representational testimony to establish liability and damages. "Where the trial court has evaluated evidence, our review is limited to determining whether the findings are supported by substantial evidence." *Pellino v. Brink's Inc.*, 164 Wn. App. 668, 681-82, 267 P.3d 383 (2011). "We draw reasonable inferences from the facts in favor of the trial court's determination." *Id.* at 682. In wage and hour cases where employers fail to keep adequate records, an employee may establish damages by "just and reasonable inference," meaning the plaintiffs must "prove[] that [they have] performed work for which [they were] improperly compensated" and "produce[] sufficient evidence to show the amount and extent of that work." *Anderson*, 328 U.S. at 687.

Here, the trial court found that "Yakima Regional failed to keep accurate records of the hours of work actually performed by the nurses." CP at 2888. However, Yakima Regional argues that the nurses' representative testimony was insufficient because the damage variance between individuals is unknowable. Yakima Regional relies on *Espenscheid v. DirectSat USA, LLC*, which found representative testimony of 42 members of a class of 2341 technicians who were paid by job type rather than by hour to be insufficient. 705 F.3d 770, 774 (7th Cir. 2013). However, this case is distinguishable. The court here heard from 9 out of the 28 nurses, which amounts to 32 percent of the represented members. Furthermore, the nurses were paid hourly and did similar work for similar lengths of time. Although they were not paid the same hourly rate, WSNA's expert witness created a tool for the court to use that incorporated the nurses' different rates of pay. Thus, there was substantial evidence to support the trial court's finding that the testimony was sufficiently representative to establish both liability and damages.

2.    The court did not err in finding meal break violations

Yakima Regional further contends that the trial court erred in finding that meal break violations occurred as a matter of law. The industrial workers act, ch. 49.12 RCW, and the Minimum Wage Act, ch. 49.46 RCW, are remedial statutes protecting employees' rights and must be liberally construed. *Pellino*, 164 Wn.

11

App. at 684. WAC 296-126-092(1) provides that "[e]mployees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift." This provision imposes a mandatory obligation on the employer to provide WAC-compliant meal breaks and to "'affirmatively promote meaningful break time.'" *Chavez v. Our Lady of Lourdes Hosp.*, 190 Wn.2d 507, 518, 415 P.3d 224 (2018) (quoting *Lopez Demetrio v. Sakuma Bros. Farms*, 183 Wn.2d 649, 658, 355 P.3d 258 (2015)). "'A workplace culture that encourages employees to skip breaks violates WAC 296-126-092.'" *Id.* (quoting *Lopez Demetrio*, 183 Wn.2d at 658).

Once a plaintiff establishes evidence of a meal break violation, the employer can rebut this by showing that no violation occurred or by showing that the employee intentionally and voluntarily relinquished their right to a break. *Brady v. Autozone Stores, Inc.*, 188 Wn.2d 576, 584, 397 P.3d 120 (2017). This voluntary relinquishment can also be shown through explicit statements, or through "unequivocal acts or conduct evidencing an intent to waive" the right. *Pellino*, 164 Wn. App. at 697. "[W]aiver will not be inferred from doubtful or ambiguous factors." *Id.*

Yakima Regional argues that it complied with WAC 296-126-092 because it had policies and procedures in place to allow nurses to take uninterrupted meal periods and report missed meal periods. However, the trial court's uncontested

12

findings of fact include the finding that Yakima Regional's productivity requirements compelled the nurses to work through their meal breaks and, "[a]lthough Yakima Regional had in place a procedure for requesting payment for a missed meal break, Yakima Regional discouraged nurses from using that procedure." CP at 2891. Therefore, the fact that Yakima Regional had procedures in place does not protect the hospital from a finding of meal break violations as a matter of law because it had not meaningfully promoted those breaks and, more importantly, it created a culture encouraging the nurses to skip the breaks and not report.

Yakima Regional alternatively argues that the nurses waived their meal breaks. However, it does not provide any evidence of an unequivocal waiver beyond ambiguous testimony from nurses that reporting the missed meal break was "out of [their] comfort zone" or that they could not take the break without violating their professional nursing obligations. Verbatim Tr. of Proceedings (VTP) (Jan. 24, 2018) at 533. Accordingly, the trial court correctly concluded that Yakima Regional did not comply with WAC 296-126-092 and that it did not meet its burden to show unequivocal waiver.

3. The court did not err in ordering double damages

Yakima Regional also challenges the award of double damages. RCW 49.52.050(2) makes it illegal to underpay an employee "[w]ilfully and with intent

to deprive the employee of any part of his or her wages." Pursuant to RCW

49.52.070, the violation of RCW 49.52.050(2) creates civil liability for double

damages. A finding of willfulness may be negated when "'a "bona fide" dispute

existed between the employer and employee regarding the payment of wages.'"

*Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.*, 175 Wn.2d 822, 834, 287

P.3d 516 (2012) (internal quotation marks omitted) (quoting *Morgan v. Kingen*,

166 Wn.2d 526, 534, 210 P.3d 995 (2009)). The employer must prove the

existence of a bona fide dispute by demonstrating that it had "a 'genuine belief' in

the dispute at the time of the wage violation" and that the "dispute [is] objectively

reasonable—that is, the issue must be 'fairly debatable.'" *Hill v. Garda CL Nw.*

*Inc.*, 191 Wn.2d 553, 562, 424 P.3d 207 (2018) (internal quotation marks omitted)

(quoting *Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d

282, 301, 745 P.2d 1 (1987); *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152,

161, 961 P.2d 371 (1998)). The subjective, genuine belief component is a question

of fact that we review for substantial evidence, and the objective inquiry "is a legal

question about the reasonableness or frivolousness of an argument that we review

de novo." *Id.*

Substantial evidence supports the finding that there was not a bona fide

dispute at the time of the violations. Despite Yakima Regional claiming that there

was a dispute about the amount of unpaid wages owed because the nurses did not

report their missed hours, the trial court found that Yakima Regional "actually knew nurses were working hours for which they were not being paid" for the entirety of the period at issue. CP at 2890. It based this finding on evidence that the nurses told Yakima Regional that they were working for hours for which they were not being paid through complaints raised during staff meetings, individual meetings, exit interviews, and other informal channels. VTP (Jan. 22, 2018) at 132-33; VTP (Jan. 23, 2018) at 507. Yakima Regional cannot use its own failure to keep accurate records in order to create a bona fide dispute. Thus, the trial court did not err in awarding double damages.

    4.  Yakima Regional fails to establish bias from the trial court

    Yakima Regional appeals the judge's evidentiary rulings and trial conduct as prejudiced. A defendant is entitled to a hearing that is and appears to be fair. *In re Disciplinary Proceeding against King*, 168 Wn.2d 888, 903-04, 232 P.3d 1095 (2010). A proceeding appears to be fair if it would appear fair to "'a reasonably prudent and disinterested person.'" *Id.* at 904 (quoting *In re Disciplinary Proceeding against Haskell*, 136 Wn.2d 300, 314, 962 P.2d 813 (1998)). Judicial rulings alone almost never constitute a valid showing of bias because there is a "presumption that a trial judge properly discharged [their] official duties without bias or prejudice." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004).

Yakima Regional alleges bias based on the trial court's rulings but without pointing to any specific facts establishing that the trial judge had a personal bias or any interest in the outcome of the trial. Yakima Regional points only to a comment about the credibility of a witness's testimony. However, because this was a bench trial, the judge's comment about credibility during his oral ruling was appropriate. VTP (Feb. 8, 2018) at 1864. Thus, Yakima Regional fails to establish that the trial court was biased against it.

5.    WSNA is entitled to prejudgment interest and attorney fees

WSNA asserts that it is entitled to prejudgment interest and attorney fees. The trial court said it would have awarded WSNA prejudgment interest if not for the Court of Appeals decision in *Hill v. Garda CL Northwest Inc.*, 198 Wn. App. 326, 394 P.3d 390 (2017). We have since overruled that decision. *Hill*, 191 Wn.2d 553. Accordingly, WSNA is entitled to prejudgment interest and attorney fees.

6.    The trial court did not adequately show the method and basis for its damages calculations

Finally, Yakima Regional claims that the trial court erred in entering findings on damages that do not show the basis or method for its computations. "A trial court must enter findings showing the basis and method of its computation of damages." *Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 840, 786 P.2d 285 (1990).

The method and basis of damages computations must give appellate courts enough information to effectively review the damages award. *Id.*

Here, the trial court failed to adequately show the method of its damages calculation. The court made factual findings regarding the percentages of missed meal breaks and how many hours worked went unpaid. The court referenced exhibit 96, which provided an easy-to-use method of damages calculation, but disavowed actually relying on exhibit 96 to determine the total damages. The judge later said that exhibit 96 was a helpful and reasonable methodology for calculating damages, but that he "did not follow [the] methodology in lockstep" and instead used it to check his calculations to confirm that he was not "wildly out of the ballpark." VTP (Apr. 23, 2018) at 1907. The trial court did not provide a clear description of the method and basis for its damage calculations. On this issue, I would remand for more specific findings.

## CONCLUSION

The majority opinion erodes the power of associational standing in a way that is not required by our precedent, encourages employers to fail to keep accurate records, and does not serve the purposes underlying prudential limitations on associational standing. I would hold that WSNA has satisfied the requirements for associational standing. Therefore, I would affirm in part, reverse in part, and remand for further proceedings. I respectfully dissent.

17

Yu, J.

Johnson

Gordon McCloud, J.

González, J.