# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| SANDRA EHRHART, individually and as personal representative of the Estate of Brian Ehrhart, | No.  55498-4-II |
| Appellant, | |
| v. | |
| KING COUNTY, operating through its health department, Public Health – Seattle & King County; SWEDISH HEALTH SERVICES, a non-profit entity; and JUSTIN WARREN REIF, an individual, | UNPUBLISHED OPINION |
| Respondents. | |

PRICE, J. — Sandra Ehrhart appeals the superior court's order granting King County's motion for summary judgment on her Public Records Act (PRA), chapter 42.56 RCW, claim related to a March 2017 PRA records request. Although Ehrhart's claim was filed more than one year after the March 2017 PRA request was closed, she argues that her claim should be permitted under equitable tolling and the discovery rule. Ehrhart has failed to meet her burden to establish equitable tolling applies, and the discovery rule does not apply to PRA claims. Accordingly, we affirm the superior court.

FACTS

In February 2017, Brian Ehrhart[1] tragically died of hantavirus. *Ehrhart v. King County*, 195 Wn.2d 388, 391, 393, 460 P.3d 612 (2020). In June 2018, Ehrhart sued King County, alleging its negligence in issuing public health advisories regarding hantavirus caused Brian's death. *Id.* at 394.

The parties filed cross motions for summary judgment regarding the public duty doctrine. *Id.* The superior court granted partial summary judgment to Ehrhart. *Id.* at 395-96. King County sought, and was granted, discretionary review from our Supreme Court. *Id.* at 396. On discretionary review, our Supreme Court held that, as a matter of law, the public duty doctrine barred Ehrhart's negligence claim against King County and ordered that Ehrhart's negligence claim be dismissed. *Id.* at 397, 410-11. In October 2018, while discretionary review of her negligence claim was pending, Ehrhart amended her complaint to include a PRA claim.

I. FACTS REGARDING PRA REQUEST

Ehrhart's attorney made a public records request in March 2017 that serves as a basis for the PRA claim. The request sought the following documents:

-All records regarding Hantavirus incidents in 2016 or 2017;

-All records in your possession regarding the hazards, dangers, and/or mortality rates of Hantavirus;

-All communications—internal or external—about Hantavirus in 2017;

-All documents reflecting any effort made by King County to make the public aware of Hantavirus in any year other than 2017;

---

[1] Brian was the spouse of appellant Sandra Ehrhart. *Ehrhart v. King County*, 195 Wn.2d 388, 391, 460 P.3d 612 (2020). Because Brian shared the same last name as Sandra Ehrhart, we will refer to him by his first name for clarity. We intend no disrespect.

-All policies, practices and/or procedures pertaining to public awareness and notification of a health hazard;

-All documents reflecting or referring to a duty or obligation on the part of the county to advise the public of health hazards;

-All communication with or about Maureen Waterbury and/or her contraction of Hantavirus;

-All communications with or about Brian Ehrhart and/or his contraction of Hantavirus;

-All studies, investigations you've performed, or conclusions rendered this year pertaining to Hantavirus or the county's response thereto;

-All statutory claims for damages filed against King County Public Health, pertaining in any way to its response to a public health hazard; and

-All settlements of any claims against King County Public Health, pertaining in any way to its response to a public health hazard.

Clerk's Papers (CP) at 325-26. Penny Larsen, the senior public records analyst at King County's Office of Risk Management Services, estimated that a response to the records request would be completed in three weeks. Larsen also reproduced the items in the request into a numbered list to facilitate identifying the subparts of the request.

Larsen contacted three individuals in the Communicable Diseases and Epidemiology Department at Public Health — Seattle and King County in order to gather information on identifying appropriate records custodians and search terms. Larsen identified 15 potential custodians of records and identified search terms tailored to each subpart of the request. Larsen "directed the identified custodians to search their emails, network or hard drive files, paper files, notebooks, SharePoint, databases and any other locations where records may exist." CP at 315. Larsen also sent the custodians a guide to responding to PRA requests and instructed the custodians

to be overly-inclusive in their responses. Larsen repeatedly followed up with the custodians and offered to assist them with their searches.

On April 27, Larsen provided the first installment of responsive records. Larsen also informed Ehrhart's attorney that there had been an unexpected delay in searching for records because the staff members of the communicable disease work group were involved in "mission critical investigations." CP at 335. Larsen estimated that additional documents would be provided in three to four weeks. Additional responsive records were provided on May 5 and June 8. On August 7, Larsen mailed the final installment of records and notified Ehrhart's attorney that the records request was now considered closed.

On October 25, Ehrhart's attorney filed another public records request with King County. On October 31, Larsen responded to this request as well. The first installment of responsive records was provided on December 13. On February 14, 2018, Larsen sent a final installment of documents and notified Ehrhart's attorney the request would be closed unless he contacted Larsen within 30 days to clarify or discuss further research for responsive documents.

After filing her negligence claim in June 2018, Ehrhart sought discovery from King County. In response, King County produced thousands of documents. In reviewing these documents, Ehrhart identified 514 documents that appeared to be responsive to and existing at the time of her March 2017 PRA request. As a result, Ehrhart amended her complaint in October 2018 to include claims for PRA violations.

## II. CROSS MOTIONS FOR SUMMARY JUDGMENT

Ehrhart moved for summary judgment and assessment of penalties under the PRA. Ehrhart asserted that King County's responses to discovery in the negligence claim produced over 1,000

documents that were responsive to her public records requests and had not been produced. Ehrhart also alleged she was "tricked" by King County because the responses to the March 2017 PRA request included some documents that were created after her request, leading her to believe that King County was producing all responsive documents created after her request. CP at 55. Specifically, Ehrhart claimed that there were 1,695 documents that were created between the time of her March 2017 PRA request and the time that the request was closed that were "culled" from production and withheld. CP at 55.

Throughout her motion, Ehrhart also repeatedly claimed that withholding of the documents impacted the outcome of her tort claim. Ehrhart specifically referenced "smoking-guns" in the allegedly withheld documents. CP at 48. In her argument regarding penalties, Ehrhart focused heavily on the argument that the county had escaped liability due to allegedly withholding the documents.

King County filed a cross motion for summary judgment. King County argued that Ehrhart's claim related to the March 2017 PRA request was barred by the statute of limitations. King County argued that Ehrhart failed to file the PRA complaint within one year of the date the request was closed—August 7, 2017. King County also argued that the discovery rule did not apply to toll the statute of limitations and that Ehrhart could not meet her burden to establish King County acted in bad faith for the purposes of establishing equitable tolling. And King County argued that it conducted an adequate search for both PRA requests.

King County supported its motion with Larsen's declaration detailing the search for records described above. In her declaration, Larsen also explained she began working on issues related to public records in 2005 and has received extensive training and certification in responding to PRA

requests. As senior public records analyst, Larsen provided training and mentoring to other public records officers and co-wrote the county's guide for responding to PRA requests. At the time of Ehrhart's request, the public records officer for Public Health was on special assignment, so Larsen was contracted by Risk Management to work on the request. Larsen specifically declared:

> At the time I fulfilled both of the requests, I had no knowledge of any intended or future lawsuit by the Ehrhart family against the County. I did not produce or withhold any records in anticipation of any litigation.

CP at 321. Larsen's declaration provided no discussion of, or explanation for, the documents Ehrhart argues were responsive and not disclosed, besides noting that any disclosure of documents that post-dated the request was inadvertent.

In reply, Ehrhart argued that equitable tolling was warranted because of King County's "egregious and deceptive conduct." CP at 441. Ehrhart argued that she "had no idea the County was holding back its smoking gun documents," and, therefore, it would be fundamentally unfair to allow King County to avoid liability based on the statute of limitations. CP at 443. Ehrhart also argued that applying the statute of limitations was inconsistent with the policy underlying the PRA. And Ehrhart asserted that "bad faith is established both by the sheer volume of documents improperly withheld, as well as the damning nature of those documents compared to the ones provided." CP at 445.

The superior court dismissed all claims arising out of the March 2017 PRA request as barred by the statute of limitations. The superior court also ruled that any claims based on documents that post-dated the request were dismissed. Ehrhart filed a motion for reconsideration, and the superior court denied it. Ehrhart then stipulated to dismissal of claims related to the October 2017 PRA request.

No. 55498-4-II

Ehrhart appeals the superior court's order granting King County's motion for summary judgment on claims arising out of the March 2017 PRA request.

ANALYSIS

Ehrhart argues that the superior court erred in dismissing her claims related to the March 2017 PRA request as untimely.[2]  We disagree.

## I.  STANDARD OF REVIEW

We review summary judgment orders de novo.[3]  *Sartin v. Est. of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021).  Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  CR 56(c).  A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue.  *Sartin*, 15 Wn. App. 2d at 172.  We review all facts and inferences in the light most favorable to the nonmoving party.  *Id.*

---

[2] Ehrhart has abandoned her argument made to the superior court that the more than 1,600 documents created after the March 2017 PRA request were wrongfully withheld.  Ehrhart makes no mention of these documents in her briefing and offers no argument or authority related to the superior court's dismissal of these claims.  Therefore, we do not consider the superior court's order dismissing the claim related to documents that post-dated the March 2017 PRA request.  *See Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290, *review denied*, 136 Wn.2d 1015 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

[3] At times on appeal, Ehrhart frames her argument in terms of whether the superior court abused its discretion in its reasons for granting King County's motion for summary judgment.  Because we review summary judgment orders de novo, we do not review the superior court's reasoning for error.  *See Chelan County Deputy Sheriff's Ass'n v. Chelan County*, 109 Wn.2d 282, 294 n.6, 745 P.2d 1 (1978) (findings of fact and conclusions of law are superfluous in summary judgment rulings and have no weight on appeal).  Instead, we review the record de novo to determine whether Ehrhart has established that her claim was timely under either equitable tolling or the discovery rule.

The moving party "bears the initial burden to show there is no genuine issue of material fact." *Id.* The burden then shifts to the nonmoving party to "present specific facts that reveal a genuine issue of material fact." *Id.* If the nonmoving party fails to put forth sufficient evidence to create a genuine issue of material fact, then summary judgment is appropriate. *Id.*

## II. STATUTE OF LIMITATIONS

"The PRA is a broad public mandate that allows citizens access to public records." *Belenski v. Jefferson County*, 186 Wn.2d 452, 456, 378 P.3d 176 (2016). The PRA provides citizens with a cause of action to challenge violations of the act. *Id.* at 457. However, those actions must be filed within one year:

> Actions under this section must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis.

RCW 42.56.550(6).

Here, it is undisputed that Ehrhart's PRA claim was filed after the one-year statute of limitations had expired. King County responded to Ehrhart's March 2017 PRA request in installments. The last installment was provided on August 7, 2017. Under RCW 42.56.550(6), Ehrhart had one year—until August 7, 2018—to file a claim based on the March 2017 PRA request. Ehrhart did not file her PRA claim until October 2018, outside the statute of limitations. Therefore, there is no genuine issue of material fact that Ehrhart's claim was untimely under RCW 42.56.550(6).

Although Ehrhart's PRA claim was untimely under RCW 42.56.550(6), she argues that her claim should have been considered timely under the doctrine of equitable tolling or the discovery rule.

A. EQUITABLE TOLLING

RCW 42.56.550(6)'s one year statute of limitations may be subject to equitable tolling. *Belenski*, 186 Wn.2d at 461-62. We will allow equitable tolling when justice requires. *Price v. Gonzalez*, 4 Wn. App. 2d 67, 75, 419 P.3d 858 (2018). A party asserting equitable tolling bears the burden of pleading and proving " 'bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff.' " *Id.* (quoting *Millay v. Cam*, 135 Wn.2d 193, 206, 955 P.2d 791 (998)). Washington courts have applied the false assurances prong in narrow circumstances and have appeared to require a showing that the defendant "made a deliberate attempt to mislead." *Id.* at 76. "Courts typically permit equitable tolling to occur only sparingly, and should not extend it to a garden variety claim of excusable neglect." *Id.* We review decisions on whether to grant equitable relief de novo. *Trotzer v. Vig*, 149 Wn. App. 594, 607, 203 P.3d 1056, *review denied*, 166 Wn.2d 1023 (2009).

Here, Ehrhart first relies on *Belenski* to argue that King County's failure to disclose allegedly responsive documents warrants equitable tolling. But *Belenski* is distinguishable. In *Belenski*, the requester requested internet access logs. 186 Wn.2d at 455. Although the agency identified the records, it informed the requester there were no responsive documents because it believed it did not have to disclose documents that were not in a readable format. *Id.* at 455-56. Here, there is no evidence that Larsen knowingly chose not to disclose responsive documents, as there was in *Belenski*. Although, in hindsight, it appears that not all responsive documents were disclosed, there is no evidence in the record that Larsen knew that those documents existed at the time she closed the request. Therefore, the response may have been objectively false, but given there is no evidence Larsen knew it was false nor is there any evidence that Larsen made a

deliberate attempt to mislead; it was not deceptive or dishonest for the purposes of equitable tolling.

Second, Ehrhart supports her claim for equitable tolling by relying on *Francis v. Department of Corrections* to argue that King County's inadequate search is evidence of bad faith. 178 Wn. App. 42, 313 P.3d 457 (2013), *review denied*, 180 Wn.2d 1016 (2014). Like *Belenski*, *Francis* is distinguishable. In *Francis*, a prisoner requested records regarding prison policy. The agency spent only 15 minutes searching for records and apparently failed to search any of 17 records storage locations. *Id.* at 50. The court determined that the agency acted in bad faith because the record "clearly disclose[d] a cursory search and delayed disclosure well short of even a generous reading of what is reasonable under the PRA . . . ." *Id.* at 63. However, the court also recognized that an agency avoids the risk of a bad faith finding by having proper procedures in place and then complying with those procedures in a reasonable manner. *Id.* at 62.

Here, Ehrhart has not shown that King County disregarded its procedures or performed a mere cursory search, as in *Francis*. King County presented ample evidence establishing that King County performed more than a cursory search because King County documented the aspects of Larsen's search, including regular communication with Ehrhart's attorney, identifying multiple potential custodians of records, selecting various search terms, and providing explicit instructions on conducting searches and responding to PRA requests. As a result of the search, Larsen compiled multiple installments of documents in response to Ehrhart's March 2017 PRA request. This effort is a far cry from the cursory search performed in *Francis*. Further, there is no evidence that Larsen disregarded policies or procedures in responding to Ehrhart's March 2017 PRA request. Therefore, *Francis* does not support the conclusion that King County acted with bad faith.

Ultimately, it is Ehrhart's burden to show King County acted in bad faith and Ehrhart has shown nothing more than King County's response failed to include all responsive records. The failure to identify and produce all responsive documents under these facts is not proof of bad faith.[4]

Ehrhart failed to establish that King County responded to her March 2017 PRA request in bad faith or engaged in deception or false assurance in a deliberate attempt to mislead. Therefore, the superior court correctly ruled that the timeliness of Ehrhart's claims related to the March 2017 PRA request was not saved by operation of equitable tolling.

B. DISCOVERY RULE

" 'Under the discovery rule, a cause of action accrues when the plaintiff knew or should have known the essential elements of the cause of action.' " *Dotson v. Pierce County*, 13 Wn. App. 2d 455, 472, 464 P.3d 563 (quoting *Allen v. State*, 118 Wn.2d 753, 757-58, 826 P.2d 200 (1992)), *review denied*, 196 Wn.2d 1018 (2020). In *Dotson*, we held that the discovery rule does not apply to PRA cases because the PRA's statute of limitations contains a clear triggering event for the statute of limitations:

> The discovery rule generally applies in cases where "the statute does not specify a time at which the cause of action accrues." *Douchette v. Bethel Sch. Dist. No. 403*, 117 Wn.2d 805, 813, 818 P.2d 1362 (1991). However, the PRA statute of limitations contains triggering events that enable a requester to know that a cause of action has accrued, and the legislature enacted no discovery rule exception. And Dotson cites no authority for applying the discovery rule to PRA actions that, as interpreted in *Belenski*, arise under a statute that specifies the statute of limitations

---

[4] Ehrhart appears to argue that the amount of documents that were not disclosed proves that King County's search was inadequate and, therefore, King County acted in bad faith. However, more than an inadequate search must be required to establish equitable tolling. *See Price*, 4 Wn. App. 2d at 76 ("Courts typically permit equitable tolling to occur only sparingly, and should not extend it to a garden variety claim of excusable neglect."). Accordingly, we address only whether Ehrhart met her burden to demonstrate that King County conducted the search in bad faith, not whether the search was adequate.

begins to run at the time of the agency's "final, definitive response." 186 Wn.2d at 461.

*Dotson*, 13 Wn. App. 2d at 472 (footnote omitted).

Ehrhart argues that we should reject *Dotson* in this case because it is unfair to allow the statute of limitations to run when she did not know she had a claim against King County. We recognize that refusing to apply the discovery rule to PRA claims may preclude some claims when the requester does not know the precise details of a cause of action until later. However, after years of a longer statute of limitations for PRA claims, the legislature determined that allowing a one-year period to sue following the closing of a request strikes an appropriate balance between ensuring compliance with the PRA through access to penalties and limiting the amount of PRA litigation. *See Francis*, 178 Wn. App. at 62; *see also* LAWS OF 1973, ch. 1 § 41 (original initiative establishing six year statute of limitations); LAWS OF 2005, ch. 483 § 5 (establishing current one year statute of limitations). The application of the discovery rule here would erode this legislative decision. Moreover, in the egregious case, when a plaintiff can actually make a showing of bad faith, the cause of action may still be pursued under the doctrine of equitable tolling.

We decline to reject *Dotson*. Therefore, we decline to apply the discovery rule to Ehrhart's PRA claim and, accordingly, Ehrhart's claims related to the March 2017 request were untimely. The superior court did not err in granting King County's motion for summary judgment on Ehrhart's March 2017 PRA request.[5] We affirm.

---

[5] Ehrhart also argues that the superior court abused its discretion by denying her motion to reconsider. However, because the superior court properly granted King County's motion for summary judgment, it could not have abused its discretion in denying Ehrhart's motion for reconsideration.

No. 55498-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
PRICE, J.

We concur:

_____
MAXA, P.J.

_____
LEE, J.